373 So.2d 971 (1979)
Frank W. BRUNER, Jr., Plaintiff-Appellant,
v.
Mavis Smith BRUNER, Defendant-Appellee.
Mavis Smith BRUNER, Plaintiff-Appellant,
v.
Frank W. BRUNER, Jr., Defendant-Appellee.
Nos. 13864, 13865 and 13835.
Court of Appeal of Louisiana, Second Circuit.
June 12, 1979.
*972 Francis M. Gowen, Jr., Shreveport, for plaintiff-appellant.
Sockrider & Bolin by H. F. Sockrider, Jr., Shreveport, for defendant-appellee.
Before PRICE, MARVIN and JONES, JJ.
JONES, Judge.
Frank Bruner, former husband of Mavis Bruner, appeals a judgment in favor of Mavis Bruner for alimony pendente lite and permanent alimony which accrued subsequent to February 15, 1978. The judgment found Frank in contempt of court for failure to pay the accrued alimony. Mavis appealed complaining that the trial judge incorrectly reduced the amount of monthly alimony due subsequent to July 15, 1978 and that the award of attorney's fees of $1,000 was inadequate. Mavis also seeks legal interest on the attorney's fee award from date of judicial demand.
Frank Bruner was awarded a separation from his wife on April 7, 1976 because of her habitual intemperance. Mavis Bruner was awarded alimony pendente lite in the amount of $350 per month in cash and Frank was ordered to pay the monthly house payment on the community house wherein Mavis resided and her utility bills.
On March 15, 1977, Mavis sued Frank for a divorce on the grounds of adultery and for permanent alimony. She also sought a clarification of the alimony pendente lite judgment based primarily on the grounds that she had sold the house which she had received in the community property settlement, on which Frank had been paying the monthly mortgage notes and utility bills as part of her pendente lite alimony. Judgment was rendered in this suit on June 30, 1977 awarding her a divorce based upon Frank's adultery, alimony pendente lite in the amount of $622.72 monthly based upon *973 an interpretation of the earlier alimony pendente lite award, and awarded permanent alimony in the amount of $689.25 to commence when the judgment of divorce became final.
Frank appealed and this court on February 20, 1978 in Bruner v. Bruner, 356 So.2d 1101 (La.App. 2d Cir. 1978) affirmed the divorce, reduced the trial court's alimony pendente lite award to $350 and reversed the permanent alimony award, finding Mavis Bruner not free from fault within the contemplation of Civil Code Article 160. Mavis applied for a rehearing complaining of that portion of the court of appeal's judgment decided adverse to her. Frank did not file an application for rehearing and therefore, the divorce became final March 21, 1978. The court of appeal denied Mavis' application for rehearing, she applied to the supreme court for writs, they were granted, and the supreme court affirmed the decision of the Second Circuit Court of Appeal on November 13, 1978 and denied Mavis' application for rehearing on December 14, 1978. Bruner v. Bruner, 364 So.2d 1015 (La.1978).
Frank paid the alimony pendente lite ordered by the June 30, 1977 judgment in the amount of $622.72 each month through February 15, 1978 and paid no further alimony because he believed he was relieved from this obligation by the court of appeal's judgment rendered February 20, 1978. On June 8, 1978 Mavis filed a rule seeking a judgment for all alimony which became due subsequent to February 15, 1978 and for attorney's fees.
Mavis secured her first job following her separation from Frank on March 11, 1978. On June 13, 1978 Frank filed a rule seeking a termination or reduction of alimony retroactive to the time Mavis obtained employment. Frank urges he is entitled to a credit against any alimony owed Mavis for that portion of the $622.72 per month payments made by him subsequent to the June 30, 1977 divorce judgment in excess of the $350 which the court of appeal found to be the correct amount of his monthly obligation. Frank further contends that the United States Supreme Court decision of Orr v. Orr, # 77-1119, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979), construing an alimony statute which provided alimony only for wives as invalid because it denied husbands constitutionally mandated equal protection, has the effect of invalidating the Louisiana wife only alimony law, Civil Code Article 160, and all awards made pursuant to it.
Mavis' rule to accrue and Frank's rule to terminate or reduce were consolidated for trial and it is the judgment rendered in these consolidated cases which is here appealed.
On December 11, 1978, the trial court awarded Mavis pendente lite alimony in the amount of $622.72 for the month of March, 1978; permanent alimony in the amount of $689.25 per month for April, May and June, 1978; and $472 per month for July, August, September, October and November, 1978 (this reflecting a reduction in permanent alimony as demanded in Frank's rule filed June 13, 1978) with interest on each alimony installment in the amount of seven percent (7%) from due date until paid. The judgment awarded Mavis $1,000 as attorney's fees. The judgment appealed from ordered Frank to continue to pay permanent alimony in the amount of $472 monthly until his obligation had been definitively terminated. (This occurred on December 14, 1978 when the supreme court denied Mavis' rehearing application.) The judgment found Frank in contempt of court for failure to pay his alimony obligations as set forth in the judgment of June 30, 1977. It sentenced him to twenty (20) days in jail, suspended his sentence and placed him on unsupervised probation conditioned upon his paying the alimony, attorney's fees, interests and costs prior to December 29, 1978. Frank appealed the judgment and also applied for and obtained a writ of certiorari for review of the trial court's judgment of December 11, 1978 and a stay order prohibiting further proceedings in connection with it pending disposition of the writ application.
*974 The principal issues are: (1) when did Frank's alimony obligations contained in the judgment of June 30, 1977 terminate? (2) was Frank entitled to any credit on accrued alimony for payments made by him on the trial court's judgment in excess of the amount to which it was later reduced by the Court of Appeal? (3) was Frank entitled to a reduction in alimony because of the change of circumstances created by Mavis' going to work, and if so, was he entitled to this reduction retroactive to the date she commenced employment? (4) is Mavis entitled to an increase in attorney's fees and to judicial interest on the amount of the award? (5) does the US Supreme Court decision invalidating wives' only alimony statutes, because of denial of equal protection, have the effect of eliminating Frank's alimony obligations incurred prior to the Supreme Court's decision of Orr v. Orr, supra, and (6) is the contempt adjudication of Frank Bruner valid?

WHEN DID FRANK'S ALIMONY OBLIGATIONS CONTAINED IN THE JUDGMENT OF JUNE 30, 1977 TERMINATE?
There is no suspensive appeal from an alimony award.[1] This article has been construed to provide when a judgment awarding alimony is reversed on appeal the alimony obligation continues until the judgment reversing the alimony award has become final. In the decision of Frederic v. Frederic, 302 So.2d 903 (La. 1974) the supreme court held that alimony awarded by a trial court did not terminate until a rehearing was denied upon the supreme court's decision affirming a court of appeal judgment reversing the award:
"Inasmuch as an appeal from a judgment awarding alimony does not suspend the execution of the judgment, La.Code Civ.P. Art. 3943, the husband was not authorized to discontinue alimony payments upon the strength of the Court of Appeal judgment of February 6, 1974 revoking alimony payments. The effect of the Court of Appeal judgment was itself suspended when this Court granted writs to review its correctness. The effective date of the revocation of the alimony due by the husband to the wife is the date the judgment of this Court in these consolidated matters becomes final. Therefore, our order staying execution of the judgment of the trial judge of June 28, 1974 cumulating past due alimony is recalled and set aside.
For the reasons assigned, the judgments complained of awarding alimony to the wife is reversed and the alimony decreed to be due the wife is revoked. It is further ordered and decreed that our order of July 3, 1974 staying execution of the judgment of the trial court cumulating alimony payments is recalled." (Main Opinion, Id. at p. 908).

* * * * * *
"I concur with that part of the opinion which holds that the devolutive appeal by the husband did not stay the wife's right to receive alimony (and collect it by contempt and other proceedings, if necessary). As the majority correctly points out, the court of appeal reversal of the continued-alimony award did not become final until action by this court.
However, I am not certain, from the majority opinion, whether the majority intends to affirm an award of alimony to the wife up to the date of finality of this decree, or instead to decree that no alimony is due effective as to the date of the original divorce decree. If the latter is the intent, then of course the holding described in the first paragraph is meaningless, because the wife collects nothing. I assume the former is the majority's intent." (Concurring Opinion, Tate, J., Id. at p. 908).

* * * * * *
"On Applications for Rehearing
PER CURIAM *975 In the application for rehearing on Norman Frederic, the mover raises a question as to the effective date of the revocation of alimony.
As noted in the majority opinion, an appeal from a judgment awarding alimony is devolutive only. See LSA-C.C.P. Art. 3943. Hence, the effective date of the termination of alimony is the date that the judgment of this Court becomes final. Both applications for rehearing are denied." Id. at p. 909.
Frank's obligation to pay alimony to Mavis continued until December 14, 1978 when the supreme court denied Mavis' application for a rehearing on the supreme court decision affirming the Second Circuit's denial of permanent alimony. Frank's pendente lite alimony continued until his divorce became final thirty (30) days following the Second Circuit Court of Appeal's affirmance of the trial court divorce decree. LSA-C.C.P. Art. 2166. Moseley v. Moseley, 216 So.2d 852 (La.App. 2d Cir. 1968). When the divorce decree became final and alimony pendente lite terminated, permanent alimony became effective by the terms of the trial court judgment for the reason Mavis had applied to and obtained writs from the supreme court to review the court of appeal's reversal of the trial court's permanent alimony award. The trial court properly rejected Frank's contention that his alimony obligations terminated on February 20, 1978 when the court of appeal reversed the trial court's judgment awarding alimony.

WAS FRANK ENTITLED TO A RETROACTIVE REDUCTION BASED UPON MAVIS' EMPLOYMENT?
The trial court retains the right to modify an alimony award based upon changes of circumstances that occur while the judgment awarding the alimony is on appeal. Rakosky v. Rakosky, 275 So.2d 421 (La.App. 4th Cir. 1973). Frank was entitled on June 13, 1978 to seek a termination or reduction in his alimony obligations established by the judgment of June 30, 1977 while the correctness of that judgment was being considered by the supreme court. He was entitled to no modification of his alimony obligation which accrued prior to the date of his application for change of the judgment. Sampognaro v. Sampognaro, 222 La. 597, 602, 63 So.2d 11, 12 (La.1953) states:
"... where once there has been an award of alimony it remains in full force and effect until the aggrieved party applies to the court and is granted a modification thereof."
In Halcomb v. Halcomb, 352 So.2d 1013, 1015, 1016, (La.1977):
"Reduction of or discharge from a judgment condemning one to pay alimony must therefore be sued for by the party against whom the judgment was rendered. Cignoni v. Cignoni, 139 La. 978, 72 So. 707 (1916). Such a judgment is not a final judgment but is always subject to review and change as to future installments in the court which rendered it. Wright v. Wright, 189 La. 539, 179 So. 866 (1938)."
"Until modified, therefore, the judgment awarding alimony is a determination of the rights of the parties and has acquired the authority of the thing adjudged. La. Code Civ.Pro. Arts. 1841-42. Nevertheless, in another sense an alimony judgment is not final in that a modification, reduction or termination of such a judgment may be sued for. La.Civ.Code Arts. 160, 232. See also Wright v. Wright, 189 La. 539, 179 So. 866 (1938). In the absence of such a suit, however, the judgment cannot be altered or modified. Cotton v. Wright, 193 La. 520, 190 So. 665 (1939); Williams v. Williams, supra, except in certain instances where the award is terminated by operation of law. As example of an automatic revocation of alimony is when an award in favor of a wife is revoked when she remarries. La. Civil Code Art. 160. Also, alimony pendente lite is terminated by the signing of a final judgment of divorce when the divorce decree makes no mention of future alimony. White v. Morris, 236 La. 767, 109 So.2d 87 (1959). However, unless *976 automatic reduction, modification or termination is provided for by operation of law, the award remains enforceable notwithstanding that a cause for reduction may have occurred which would, upon proper suit, warrant such a reduction. Support for this rule is found in a proper regard for the integrity of judgments. Such a regard does not condone a practice which would allow those cast in judgment to invoke self-help and unilaterally relieve themselves of the obligation to comply. Any other rule of law would greatly impair the sanctity of judgments and the orderly processes of law. To condone such a practice would deprive the party, in whose favor the judgment has been rendered, of an opportunity to present countervailing evidence, and at the same time deny the judge an opportunity to review the award in light of the alleged mitigating cause which had developed since its rendition."
Frank's contention in his rule filed June 13, 1978 that he is entitled to a retroactive reduction in his alimony effective March 11, 1978, when Mavis commenced her employment, is without merit. Frank cites Graval v. Graval, 355 So.2d 1057 (La.App. 4th Cir. 1978) wherein a husband was given a retroactive alimony termination. The wife in Graval concealed her employment from her husband, thereby depriving him of the right to urge in a judicial proceedings the availability of her wages to satisfy her needs, whereas there is no evidence that Mrs. Bruner concealed her employment. Frank testified he knew Mavis would have to go to work when he discontinued payment of alimony in February 1978. The rationale of Halcomb v. Halcomb, supra, and Sampognaro v. Sampognaro, supra, fully support the trial court's rejection of Frank's contention that he was entitled to a retroactive reduction in his alimony.

IS FRANK ENTITLED TO A CREDIT AGAINST ACCRUED ALIMONY?
Frank contends that because the court of appeal said he owed alimony pendente lite in the amount of $350 and he paid alimony pendente lite in the amount of $622.72 per month, that he is entitled to apply the amount paid by him which the Second Circuit said he didn't owe as a credit to the alimony which accrued subsequent to the time he discontinued making all alimony payments. This contention is untenable because it is contrary to the rule as expressed in Frederic v. Frederic, supra, to the effect that once the alimony is established in a judgment, it is owed until the judgment reversing or modifying it becomes final. This is true even though the judgment of the appellate court unequivocally announces that alimony is not owed at the outset.

WAS FRANK ENTITLED TO THE REDUCTION AWARDED BY THE TRIAL COURT JULY 15, 1978?
Frank is dissatisfied because the trial court only reduced permanent alimony to $472. He contends Mavis' needs were such that her salary of $466 was adequate to cover them. Our review of the evidence establishes that Mavis actually spent $746 per month during 1978 from the very limited funds available to her. While this list of expenses contained a $155 per month car note, which no longer existed because Mavis had sold property and paid off the car, the list failed to contain medical expenses, adequate auto operating expenses and a sum for income tax due on the alimony award, all of which were reflected in the list of necessary expenses compiled in June, 1977, and introduced in these proceedings. This list reflected total monthly expenses of $1,545.83. We find adequate evidence in the record to support the trial judge's finding that Mavis' necessary Bernhardt expenses per month would be no less than $938. The supreme court in Bernhardt v. Bernhardt, 283 So.2d 226, 229 (La.1973) held:
"... `maintenance', while meaning primarily food, clothing and shelter, does include such items as reasonable and necessary transportation or automobiles expenses, medical and drug expenses, utilities, household expenses, and the income *977 tax liability generated by the alimony payments made to the former wife."
The trial court deducted Mavis' salary in the amount of $466.39 from her necessary expenses and reduced Frank's alimony obligation effective July 15, 1978 to $472. We find no abuse of the trial court's discretion in this determination.
Mavis contends Frank was entitled to no reduction because her earnings should not have been deducted from her needs. She bases this contention on Ward v. Ward, 339 So.2d 839 (La.1976) which held that a wife is not required to work in order to be entitled to permanent alimony. She then reasons that she only went to work because Frank wrongfully terminated her alimony and under these circumstances, she contends that her earnings from her forced employment should not be considered in determining the amount of her alimony award. The reason Mavis went to work does not change the fact that her earnings become means and decrease her need for C.C. Art. 160 alimony.
Mavis further argues that because of the emphasized language in the following quote from the Ward opinion her earnings should not be considered in determining the amount of her award:
"After divorce, the wife has no analogous legal duty to earn her own livelihood, thus relieving the husband of his liability for alimony. As we have noted, an alimony award is limited to basic necessities. See Bernhardt v. Bernhardt, supra. This limitation alone provides the necessary incentive for a divorced wife who has occupational skills or training to use them to raise her standard of living." (Emphasis supplied) Id. at 842
Mavis construes this language to mean that a wife is entitled to collect adequate alimony from her former husband to provide her with the necessities of life without any consideration of funds earned by her. She argues that the wife may then use her earned money to secure a standard of living above the necessities contemplated by Bernhardt. Our view of the correct interpretation of the language relied upon by Mavis is that it simply means that a woman with occupational skills has an incentive to use them to provide herself with a high standard of living, rather than to perform no work, and to rely upon being supported with only the necessities of life by her former husband. The trial court's method of determining Mavis' alimony is fully supported by the language contained in Ward, supra:
"Insofar as current earnings of the wife are concerned, they are treated no differently than other income. When she receives earnings, they become means for her support. Such earnings must be taken into account in awarding alimony." Id. p. 842.

CONSTITUTIONAL ISSUE
In Orr v. Orr, supra, the United States Supreme Court held an Alabama statute providing alimony to women, but not to men, a classification solely based on gender, was a violation of the Equal Protection Clause of the Fourteenth Amendment. The Louisiana Supreme Court has interpreted LSA-C.C. Art. 160 to provide alimony for women only. Loyacano v. Loyacano, 358 So.2d 304 (La.1978).
Frank contends he cannot be compelled to pay accrued alimony pursuant to an unconstitutional article. Mavis contends Orr v. Orr, supra, should be applied prospectively in order not to impair vested rights of a wife in accrued alimony.
In Cipriano v. City of Houma, 395 U.S. 701, 706, 89 S.Ct. 1897, 1900-1901, 23 L.Ed.2d 647 (1969) the Supreme Court struck down a statute on equal protection grounds and stated the effect would be prospective:
"Where a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity. Great Northern R. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 364, 366, 53 S.Ct. 145, 148, 77 L.Ed. 360, [85 A.L.R. 254] (1932). See Chicot County Drainage *978 Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940). Cf. Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965)."
We hold Orr v. Orr, supra, should not be applied retroactively. Consequently, alimony which accrued prior to the US Supreme Court's decision will not be affected and this will minimize the hardship caused to those needy former wives who have made expenditures expecting to accrue past due alimony. Mavis is entitled to alimony up to December 14, 1978, the date the court of appeal's judgment holding Mavis' fault precluded her from receiving permanent alimony became final and definitive. Under these circumstances all alimony to which Mavis was entitled had accrued before the March 1979 US Supreme Court decision of Orr v. Orr, supra.

ATTORNEY FEES
The trial court awarded Mavis $1,000 for attorney's fees. Mavis seeks an increase in the attorney fee award and Frank seeks to decrease it. Attorney fees, other than those provided for by contract, may only be awarded when authorized by statute. Attorney fees are authorized in suits to accrue past due alimony by LSA-R.S. 9:305:
"When the court renders judgment in an action to make past due alimony or child support executory, the court may award reasonable attorney fees in favor of the prevailing party."
There is no statute authorizing attorney fees for the type of appellate work performed by Mavis' attorney in connection with her divorce and permanent alimony. A substantial portion of the attorney fees now being claimed by Mavis is for work performed by her attorney in the court of appeal and the supreme court in connection with their review of the judgment providing for the alimony she seeks to accrue in these proceedings. Much of the work performed by Mavis' attorney in these proceedings related to the defense of the rule by Frank to reduce his alimony obligation. No statute authorizes an award of attorney fees for the defense of such an action. We conclude the award of $1,000 is a fair and reasonable fee for the work performed by Mavis' attorney in the trial court and on appeal relating solely to the action to make ten months past due alimony executory. The attorney fee award should bear seven percent (7%) interest from the date of the trial court judgment wherein the award was made.
In Alexander v. Burroughs, 359 So.2d 607 (La.1978) the supreme court awarded interest on attorney's fees in a redhibition action from the date of judgment. The court stated attorney's fees were not ascertainable until judgment was rendered and for that reason interest did not commence to run until the date of judgment.

CONTEMPT
The trial court held Frank in constructive contempt of court for failing to pay alimony and sentenced him to twenty (20) days in jail. The court suspended his jail sentence and placed him on probation for one year, conditioned upon paying past due and future alimony. We find the procedure followed in Frank's contempt adjudication was defective and for that reason reverse the finding of contempt. LSA-C.C.P. Art. 225 provides:
"Except as otherwise provided by law, a person charged with committing a constructive contempt of court may be found guilty thereof and punished therefor only after the trial by the judge of a rule against him to show cause why he should not be adjudged guilty of contempt, and punished accordingly. The rule to show cause may issue on the court's own motion, or on a motion of a party to the action or proceeding, and shall state the facts alleged to constitute the contempt. A certified copy of the motion, and of the rule to show cause, shall be served upon the person charged with contempt in the same manner as a subpoena, at least forty-eight hours before the time assigned for the trial of the rule.

If the person charged with contempt is found guilty, the court shall render an *979 order reciting the facts constituting the contempt, adjudging the person charged with contempt guilty thereof, and specifying the punishment imposed." (emphasis supplied.)
Frank was not served with a certified copy of a motion and a rule to show cause order why he should not be held in contempt because no contempt rule was ever filed. In State v. Collins, 237 La. 111, 110 So.2d 545 (1959) the court stated defendants were entitled to be cited and served with a rule to show cause for contempt in accordance with the contempt provisions of the statute. In that case, although a rule to show cause for contempt had issued, the judge sentenced defendants without a hearing and the supreme court reversed because contempt proceedings require a hearing on a rule to show cause. There was no hearing on a rule to show cause for contempt in the instant proceedings.
In Rodriguez v. Rodriguez, 245 So.2d 765, 769 (La.App. 4th Cir. 1971) where a contempt adjudication was sought in a proceeding where no contempt rule was filed, the court stated:
"Appellant's contention that the trial court erred in failing to find the defendant guilty of contempt is without merit. A review of Mrs. Rodriguez's answer and reconventional demand reveals that she did not institute a contempt proceeding against her husband, and therefore the trial court was powerless to grant this demand."
See also Wall v. Wall, 225 So.2d 47 (La.App. 1st Cir. 1969).
FOR THE REASONS ASSIGNED:
We amend and recast Paragraph "E" of the trial court's judgment to read as follows:
Mavis Bruner is awarded past due alimony in the following amounts, with interest of 7% from the due date of each installment until paid.

DUE
DATE THROUGH AMOUNT
 3/15/78 3/21/78 (7/31 × $622.72) $140.63
 3/22/78 4/14/78 (10/31 + 14/30 × $544.02
 $689.25)
 4/15/78 5/14/78 $689.25
 5/15/78 6/14/78 $689.25
 6/15/78 7/14/78 $689.25
 7/15/78 8/14/78 $472.00
 8/15/78 9/14/78 $472.00
 9/15/78 10/14/78 $472.00
10/15/78 11/14/78 $472.00
11/15/78 12/14/78 $472.00

We AMEND and recast Paragraph "F" of the trial court's judgment to read as follows:
(F) Awarding her attorney fees in the principal sum of $1,000 with interest at the rate of seven percent (7%) per annum from December 11, 1978 until paid.
We REVERSE the contempt conviction and AMEND the trial court judgment by eliminating Paragraph "I".
The case has been decided by our review on the writ granted and upon appeal and we recall the stay order issued at the time the writ was granted prohibiting further proceedings in connection with the judgment rendered in those consolidated cases.
As AMENDED, the trial court judgment is affirmed with all cost in this court incurred by the appeal and the writ application assessed equally to the litigants.
NOTES
[1] C.C.P. Art. 3943"An appeal from a judgment awarding custody of a person or alimony can be taken only within the delay provided in Article 3942. Such an appeal shall not suspend the execution of the judgment in so far as the judgment relates to custody or alimony."