408 So.2d 973 (1981)
Beverly Shoap WILHITE, Plaintiff-Appellant,
v.
Sidney R. WILHITE, Defendant-Appellee.
No. 14727.
Court of Appeal of Louisiana, Second Circuit.
December 7, 1981.
On Rehearing January 29, 1982.[*]
Writ Denied March 12, 1982.
James D. Sparks, Jr., Monroe, for plaintiff-appellant.
Blackwell, Chambliss, Hobbs & Henry by James A. Hobbs, West Monroe, for defendant-appellee.
Before PRICE, MARVIN and FRED W. JONES, JJ.
*974 FRED W. JONES, Jr., Judge.
Plaintiff appealed an assertedly inadequate alimony pendente lite judgment, contending that the trial judge erred in (1) classifying as income a monthly payment of $1,000 received by plaintiff from defendant on a promissory note executed by him in her favor pursuant to a community property settlement and (2) taking into consideration in fixing the alimony pendente lite the receipt by plaintiff of $21,400 in cash as part of the consideration for the described community property settlement.
We amend to increase the alimony pendente lite award and affirm.
Beverly Shoap Wilhite and Sidney R. Wilhite were married in 1975. Having been judicially separated in property by a judgment dated July 30, 1980, the parties confected a settlement of their community on October 6, 1980. In general, under the terms of that instrument Mrs. Wilhite conveyed to her spouse her undivided interest in substantial movable and immovable property in consideration for the payment to her of $21,542 in cash and the execution by her husband in her favor of a promissory note in the principal amount of $100,000, payable in 100 monthly installments of $1,000 each beginning on November 1, 1980, bearing interest at the rate of 10% per annum from maturity until paid. In addition, the husband assumed the payment of all community debts and obligations.
On March 19, 1981, Mrs. Wilhite sued her husband for a judicial separation and, in connection therewith, filed a rule for alimony pendente lite, asking for $1250 per month.
After a hearing on the rule, the trial judge awarded plaintiff $250 per month, based upon the following oral reasons:
"[T]here was also testimony that there was some $21,400 in T bonds in a local bank which was drawing 13% interest and Mrs. Wilhite chose to withdraw those funds and deplete those assets. The Court feels that there ... that the total assets ... that the income from Mrs. Wilhite must be considered, that being a $1,000 a month, and will make an award of alimony pendente lite in the sum of $250."
Prior to its amendment in 1979, Louisiana Civil Code Article 148 provided:
"If the wife has not a sufficient income for her maintenance pending the suit for separation from bed and board or for divorce, the judge shall allow her, whether she appears as plaintiff or defendant, a sum for her support, proportioned to her needs and to the means of her husband."
In Smith v. Smith, 217 La. 646, 47 So.2d 32 (1950), the Louisiana Supreme Court drew the following clear distinction between the rights of the claimant wife under Article 148 and those under La.C.C. Art. 160[1]:
"Article 148 has for its purpose the enforcement of the husband's obligation of support of his wife as it exists under Article 120 of the Civil Code, which continues during the pendency of a suit for separation from bed and board or for divorce and does not terminate until the marriage is dissolved either by death or by divorce. While the suit is going on the obligation still exists and, whether the wife is the one who is suing or is being sued, if she has not a sufficient income for her maintenance, the judge shall allow her a sum for her support, the amount to be gauged according to what her needs are and what are the means of her husband. It is to be noted here that both her needs and the means of the husband are to be taken into consideration in determining the sum to be allowed.
"On the other hand, Article 160 merely makes some provision for the maintenance of the wife who has obtained the divorce, after the marriage has been terminated and the obligation of support by *975 the husband under Article 120 of the Code no longer exists. But it is only in the event that she has not sufficient means for her maintenance that the Court may, in its discretion, allow her out of the property and earnings of the husband, a sum not to exceed one-third of his income, and this alimony is revocable in case it becomes unnecessary, and in case the wife should contract a second marriage."
Both Article 148 and Article 160 were amended in 1979 to provide for the "gender-neutral" approach mandated by the U.S. Supreme Court. However, while significant alterations were made to the content of Article 160[2], only minor textual changes were made to Article 148.[3]
As we observed in Arrendel v. Arrendell, 390 So.2d 927 (La.App. 2d Cir. 1980), the legislature's failure to change the criteria set forth in Article 148 for determining entitlement or amount strongly indicated an absence of intent to overrule prior jurisprudence interpreting the significant provisions of this codal article. We then concluded:
"[T]herefore, the criteria of Article 148, as interpreted in prior cases, remain uncharged except that they are now to be applied in a gender-neutral manner." p. 930
It is in this context that we consider appellant's argument that the trial judge erroneously classified as "income" the $1,000 monthly payment received by plaintiff as consideration for the conveyance of her interest in community property to the defendant-husband.
We pointed out in Staser v. Staser, 347 So.2d 514 (La.App. 2d Cir. 1977) that "[t]here is no requirement that she (the wife) deplete her capital (emphasis added) before she is entitled to enforce the support obligation of the husband." Also see McMath v. Masters, 198 So.2d 734 (La.App. 3rd Cir. 1967).
Whether a monthly payment of the nature received by plaintiff in this case is "income" or "capital" under Article 148 was squarely answered in Newson v. Newson, 176 La. 699, 146 So. 473 (1933). There, in a community property settlement the wife had conveyed to her husband her undivided half interest in the community property for a total consideration of $2,000, part of which was paid in cash and the balance represented by a promissory note payable $75 per month. Subsequently, in an appeal involving a dispute over child support, our Supreme Court held:
"The $75 a month which she (the wife) is supposed to get, in discharge of the $1,800 due her for her one-half of the community property, is not income, but capital." (Emphasis added)
In Hargrove v. Hargrove, 272 So.2d 394 (La.App. 2d Cir, 1973), the husband urged that an alimony pendente lite award be set aside because his wife's share of the community property was "more than adequate to provide her support." That argument was rejected with this explanation:
"The test and controlling factor provided by the article (CC 148) is the measure of the wife's income, and only after a final divorce has been granted does the amount of the assets of the wife, including her share of the community property, become material under LSA-C.C. Art. 160."
If, rather than receiving the $100,000 promissory note plaintiff had been paid that sum in cash which she held at the time of the hearing, those funds clearly could not have been properly classified as "income" under Article 148. The mere fact that plaintiff received payment for her community interest in installments rather than a *976 lump sum would not on any rational basis serve to convert these payments from a return of "capital" to the receipt of "income" under Article 148. The trial court's holding that the $1,000 monthly payments received by plaintiff constituted "income" for the purpose of determining her entitlement to alimony pendente lite in effect required that she deplete a capital asset, which we forbade in Staser v. Staser, supra. Therefore, we conclude that the trial judge erred in this ruling.
Although it is not clear what weight was accorded by the trial judge to the receipt by plaintiff of $21,542 in cash in connection with the community property settlement, our reasoning with reference to his error in classifying the $1,000 monthly payments as "income" applies with even more cogency to this cash item. Consequently, we find that any consideration given by the trial judge to plaintiff's "total assets" in fixing alimony pendente lite constituted error on his part.
Having concluded that the trial judge committed these significant errors in assessing factors determinative of an appropriate alimony pendente lite amount, we turn to an independent evaluation of the record to decide whether the award of $250 per month was inadequate under the circumstances.
At the time of the hearing on the rule to fix alimony pendente lite plaintiff was unemployed and had no "income" within the meaning of Article 148. Her itemized monthly expenses, which the trial judge characterized as not "that far out of line," totaled $1815.00.
Defendant, who described himself as a millionaire, reported a gross income of $124,750 in 1978 and $173,500 in 1979. He testified he drew from his business $16,000 each month, from which he paid $6,000 in estimated taxes and $4450 on promissory notes, leaving a balance of about $5500. His monthly living expenses averaged $750. Defendant stated that during the marriage his wife's expenses were "just open ... whatever she needed."
Addressing the function of alimony pendente lite in Arrendell v. Arrendell, supra, we stated:
"The purpose of alimony pendente lite is to temporarily, pending litigation, provide for the spouse who does not have sufficient income for his or her maintenance.... In a sense, it is designed to preserve and continue the status quo insofar as maintenance and support are concerned.... Where the spouses themselves have, during the marriage, assigned the role of wage earner to one and the role of homemaker to the other, fairness and practicality dictate that the wage earner spouse continue that role during the temporary period of litigation and adjustment."
Considering plaintiff's needs and defendant's means, we conclude that plaintiff is entitled to the sum of $1,000 monthly as alimony pendente lite. Accordingly, the judgment of the district court is amended to increase the monthly alimony pendente lite award from $250 to $1,000 and, as amended, is affirmed, at appellee's cost.

ON REHEARING
We granted a limited rehearing in this matter to consider questions raised concerning the date from which appellee-husband would owe the increased alimony pendente lite payments to appellant-wife, i.e., whether our judgment would be retroactive to March 19, 1981, the date fixed by the trial judge for the beginning of alimony payments, or the date of the finality of this court's judgment.
Appellee contends that the increased payments should begin on the date of the finality of this court's judgment, arguing that the rationale of Bruner v. Bruner, 373 So.2d 971 (La.App. 2d Cir. 1979), which led this court to refuse to make our judgment decreasing an alimony pendente lite award retroactive, should apply with equal cogency to prohibit an appellate-ordered increase in alimony pendente lite from being retroactive. We do not agree.
*977 It is axiomatic that a trial court has broad discretion in fixing both the amount of alimony pendente lite and the beginning date for the payments. As we pointed out in Cumpton v. Cumpton, 283 So.2d 846, 848 (La.App. 2d Cir. 1973):
"Compelling reasons may be presented to the court leading to a conclusion it would be impractical and inequitable to commence accrual of alimony ordered in the decree at the retroactive date of judicial demand. We know of no reason why a trial judge should not be accorded the same discretion in specifying a commencement date for alimony payments as he is given in determining the needs of the wife and ability of her husband to pay."
Also see Hatch v. Hatch, 335 So.2d 707 (La.App. 2d Cir. 1976) and Whitmeyer v. Whitmeyer, 326 So.2d 884 (La.App. 2d Cir. 1976).
There is no logical reason why an appellate court should not exercise the same wide discretion in decreeing the effective date of its reversal or modification of a trial court judgment with reference to alimony pendente lite. For example, if we reverse a trial court judgment denying alimony pendente lite altogether, there seems no question but that we may as a discretionary act make the award retroactive to the date of judicial demand or at least to the date of the trial court judgment denying the award.
Exigencies of a particular case may require that retroactive effect be given to the appellate judgment dealing with this subject. In another case circumstances may conceivably mandate prospective effect only.
In this case our judgment expressly amended the judgment of the district court to increase the alimony pendente lite award. It was our intention, based upon a consideration of the evidence in the record, to exercise our discretion so as to give retroactive effect to our judgment. The fact that a suspensive appeal may not be taken from a judgment relating to alimony[1] in no way inhibits the possibility of retroactive effect being given to this judgment.
We do not construe Bruner as mandating the result espoused by the appellee-husband. Bruner held that our reduction of an alimony pendente lite award did not become effective until the date of the finality of our judgment, in contrast to the effect of the reversal or modification of trial court judgments in other devolutive appeal cases. The rationale for this distinction was based upon our construction of Article 3943 as reflecting a legislative intent to assure the spouse who received the award in the trial court of receiving necessary support pending the appeal. The reason for making an exception in that particular situation does not exist here. In fact, applying the Bruner rule in this case would have just the opposite effectby not making the judgment retroactive we would be penalizing the spouse Bruner seeks to protect. In brief, we do not interpret Bruner as abolishing the broad discretion appellate courts may exercise in fixing the effective date of judgment reversing or modifying trial court awards of alimony pendente lite.
For these reasons, in order to clarify the effect of our original judgment in this matter, we amend that judgment to provide that the judgment of the district court is amended to increase the monthly alimony pendente lite from $250 to $1,000 effective March 19, 1981, and to allow legal interest on the increased alimony from the date this opinion becomes final until the date or dates that the increased alimony due from March 19, 1981 is paid, and, as amended, the district court judgment is affirmed, at appellee's cost.
As thus amended, our original judgment is reinstated.
NOTES
[*] Limited Rehearing Granted on behalf of appellant and Rehearing Denied on behalf of appellee, Jan. 18, 1982, JASPER E. JONES, J., recused.
[1] At the time, Article 160 provided in pertinent part: "If the wife who has obtained the divorce has not sufficient means for her maintenance, the court may allow her in its discretion, out of the property and earnings of her husband, alimony which shall not exceed one-third of his income...."
[2] The legislature added specific criteria to assist the trial judge in determining whether a spouse is entitled to alimony and, if so, the amount. Most significant, the article now expressly requires the trial judge to consider the claimant's earning capability in determining entitlement to alimony.
[3] The word "spouse" or the phrase "claimant spouse" was substituted for the words "husband" or "wife" and the word "may" replaced the word "shall" with reference to the trial judge's award of alimony pendente lite.
[1] La.C.C.P. Art. 3943 provides:

An appeal from a judgment awarding custody of a person or alimony can be taken only within the delay provided in Article 3942. Such an appeal shall not suspend the execution of the judgment in so far as the judgment relates to custody or alimony.