302 So.2d 903 (1974)
Mrs. Caroline Wayne FREDERIC
v.
Norman FREDERIC.
Nos. 54630, 54930 and 55005.
Supreme Court of Louisiana.
October 28, 1974.
Rehearings Denied November 27, 1974.
*904 Arthur C. Reuter, Jr., Reuter & Reuter, New Orleans, for defendant-applicant in Nos. 54930, 55005 and defendant-respondent No. 54630.
Russell J. Schonekas, Tucker & Schonekas, New Orleans, for plaintiff-respondent in Nos. 54930, 55005.
Russell J. Schonekas, Arthur S. Mann, III, Tucker & Schonekas, New Orleans, for plaintiff-applicant in No. 54630.
SUMMERS, Justice.
Three writs were granted in this case principally to resolve two problems: When a wife has obtained a separation from bed and board on the ground of abandonment, is it necessary to relitigate the question of fault later when either husband or wife files for a final divorce in order for the wife to obtain alimony under Article 160 of the Civil Code? And, do the facts of this case establish that the wife "has not sufficient means for her support" within the contemplation of Article 160 of the Civil Code.[1]
In the meantime, after these writs of certiorari were granted, the first issue was resolved in the decision in Fulmer v. Fulmer, on the docket of this Court rendered October 14, 1974, 301 So.2d 622. It was held there that determination of marital "fault" in the separation proceedings on the grounds of abandonment bars relitigation of the "fault" issue for purposes of an award of alimony following the final divorce on the ground of no reconciliation.
The second question is one of fact which we resolve by holding that the wife has sufficient means for her support.
In the case at bar the wife instituted suit against her husband on November 18, 1970 alleging that he abandoned her, withdrew from the common dwelling and established residence elsewhere in the parish; that he *905 refused to return to live with her and informed her that it was his intention to leave her permanently. A default was confirmed and made final on April 15, 1971, and judgment was rendered at that time in favor of the wife and against the husband decreeing a separation a mensa et thoro between them. The husband was ordered to pay $500 per month for the support of the wife.[2]
Then on June 19, 1972, following the decree of separation from bed and board, the husband filed for a final divorce on the ground that there had been no reconciliation between the spouses for more than one year and sixty days. His petition is authorized by Section 302 of Title 9 of the Revised Statutes. See also La.Code Civ.P. Art. 160(2) in footnote 1. The wife answered praying that she be awarded alimony after divorce in the sum of $750 per month.
Accordingly, on October 5, 1972, judgment was rendered in favor of the husband and against the wife decreeing a final divorce. The wife was awarded alimony of $500 per month. An appeal was taken by the husband from that portion of the judgment awarding the wife alimony. In the Court of Appeal the alimony award to the wife was contested on two grounds, need and fault. 295 So.2d 52. In deciding the case the Court of Appeal correctly held that it was unnecessary to relitigate the question of fault at the time of the final divorce, after separation from bed and board, is petitioned for. The court held, however, that although the husband could have offered proof on the issue of the wife's freedom of fault, the default judgment of separation from bed and board carries with it the implication of fault, and, in the absence of contradictory evidence, Article 160 of the Civil Code was authority for an allowance of alimony to her.
It was not correct to say that the issue of the wife's fault was relevant on this petition for final divorce on the particular grounds alleged here, and that the husband could have offered evidence on that point. The law is otherwise.
When the husband petitions for a final divorce on the ground that there has been no reconciliation after a judgment of separation from bed and board in favor of the wife as provided for in Section 302 of Title 9 of the Revised Statutes, the wife's fault is not at issue, and she is entitled to alimony if she establishes that she has not sufficient means for her support. Fulmer v. Fulmer, 301 So.2d 622 (La. 1974). August v. Blache, 200 La. 1029, 9 So.2d 402 (1942). The reasons for this result are clearly stated in August v. Blache as follows:
"[T]he obtaining of the judgment of separation from bed and board by the wife carried the implication that the separation was not caused by her fault; and the granting of the final judgment of divorce, thereafter, in favor of the husband, in such a case, does not depend upon any question of fault on the part of either the husband or wife, but is founded entirely upon the absolute right of either of the spouses to obtain the divorce on the proof merely that there has been no reconciliation during the probation period allowed by the statute. In fact no other evidence is relevant in a suit for divorce brought by the party against whom a judgment of separation from bed and board has been rendered, and on the ground that no reconciliation had taken place."
Thus, although the result reached by the Court of Appeal is correct, this explanation is set forth to dispel any idea that this Court approves the statement that fault was at issue, to avoid erroneous impressions which may be gained from a reading of the Court of Appeal opinion, and also to avoid the consequent unnecessary litigation *906 the language in the Court of Appeal opinion may encourage.
On the issue of the wife's entitlement to alimony after final divorce on the ground that she had not sufficient means for her support, the Court of Appeal found that the wife was then an owner in indivision of the community estate and could provoke a partition of the community, but this had not yet been accomplished. Upon this determination the Court held that until the estate is partitioned and the wife is placed in possession of "liquid, liquidable or income-producing property, she has no practical `means for her support' and is entitled in that respect to Article 160 alimony."
From this record we learn that in 1970 when the suit for separation was instituted, the community estate consisted of cash in the bank ($1,800); miscellaneous stocks ($2,585); automobiles ($4,200); land and buildings ($71,000)a total of $79,585; plus stock interests owned in several corporations, which stock had a book value of $138,317. All together, then, the community property had a value of $217,902. Against these assets, however, liabilities amounting to $29,002 existed, leaving the net value of the community estate to be $188,900, one-half of which belonged to the wife, her interest amounting to $94,450. Of course, these estimates were furnished by the husband, but there is nothing in the record to the contrary.
After the decree of separation from bed and board was entered, this one-half interest became vested in the wife retroactively to the day the suit was filed. Thereafter she had the right to demand a partition in kind or by licitation. Many efforts were made by the husband to bring about an amicable settlement but to no avail. The wife apparently making no effort in that direction. Although the wife's attorney was appointed at the inception of the suit as the notary to effect a partition, a partition has not yet been effected despite the entreaty of the trial judge that an effort be made to bring about an amicable partition. It is noted also that the wife has made no showing whatsoever that her interest in the community is insufficient for her support. Her reliance appears mainly to be that until the community is liquidated she is entitled to alimony. This position perhaps explains her reluctance to proceed with the partition, probably because of her erroneous impression that her undivided interest in the community could not be considered "means" until liquidated.
During late April or early May 1973 the wife received a check for $20,700 representing her share of the sale price of part of the real estate the community owned. This amount was liquid and is available for her support.
After divorce the husband's obligation to support the wife no longer exists, and the court has discretion to allow alimony out of the property and earnings of the husband in a sum not exceeding one-third of his income only if the wife is without sufficient means for her support. Smith v. Smith, 217 La. 646, 47 So.2d 32 (1950). Alimony awarded upon the authority of Article 160 is a gratuity in the nature of a pension. Hays v. Hays, 240 La. 708, 124 So.2d 917 (1961); Brown v. Harris, 225 La. 320, 72 So.2d 746 (1954).
As used in Article 160 reference to "means for her maintenance" refers primarily to food, shelter and clothing. Rabun v. Rabun, 232 La. 1004, 95 So.2d 635 (1957); Stabler v. Stabler, 226 La. 70, 75 So.2d 12 (1954).
The test is not whether the wife has the means to support herself in the manner to which she is accustomed to live, but what will provide her with sufficient means for her maintenance, Vicknair v. Vicknair, 237 La. 1032, 112 So.2d 702 (1959), the wife having the burden of establishing her necessitous circumstances. Malone v. Malone, 260 La. 759, 257 So.2d 397 (1970). The *907 amount necessary for maintenance of a divorced wife is to be determined by the circumstances of each particular case. Brown v. Harris, 225 La. 320, 72 So.2d 746 (1954); Wilmot v. Wlmot, 223 La. 221, 65 So.2d 321 (1953).
And in determining means for the wife's maintenance, her income is not the sole consideration. All of her means must be regarded to determine their sufficiency for her maintenance. Smith v. Smith, 217 La. 646, 47 So.2d 32 (1950). The Smith Case posed the question, "Can a wife, who is in possession of property and assets valued at $20,000 be said to be without sufficient means for her maintenance?" Answering the question, the Court said: "Regardless of the station in life which she occupies, we say that obviously she is not." The Court continued by saying:
"Maintenance may be said to include primarily food, shelter and clothing, and certainly property or means amounting to $20,000 ought to provide those necessities very readily. How far she should go in depleting her capital presents another question. Whilst we do not think that she should be made to use it all, on the other hand, we do not believe that the law intends that she can maintain it intact... To what extent the wife should be made to use up her capital before applying for the alimony is a matter with which we are not concerned at this moment. If the time should come when she has reason to believe that she has not a sufficient amount left for her maintenance, she has the right to apply to the Court for alimony in a sum sufficient for that purpose...."
Making allowances for the differences in money values, the similarity of the issue in Smith v. Smith to the instant case is notable. Moreover, the facts in the Smith Case are not as strong for denying alimony as are the facts in the case at bar. In the Smith Case the wife had no liquid assets, only property; whereas, in the case at bar besides having undivided interest in property valued in excess of $73,000, the wife has $20,700 in cash available as evidenced by the check she received for her interest in the sale of community property. She furthermore received an offer from her husband to pay her $75,000 for her interest in the community long before the sale of the property for which she received $20,700.
Considering the facts of this case, the wife has sufficient means for her support as that term is used in Article 160 of the Civil Code. Therefore, the judgment appealed from is reversed and set aside and the alimony awarded to the wife is revoked. This result pertains to the writ numbered 54,930.
Prior to any decision by the Court of Appeal in the foregoing matter, and while the case was pending there, the husband filed a rule in the district court to revoke the award of alimony because the wife had received $20,700 for her share from the sale of some of the community real estate. The rule to terminate the alimony was denied and the husband again appealed. Another section of the Fourth Circuit decided the rule on February 6, 1974 finding that the wife had sufficient means for her support. 290 So.2d 469. The wife then applied to this Court to review that judgment. That writ was granted and is numbered 54,630. Since the judgment is correct it is affirmed for the reasons stated in our treatment of the writ numbered 54,930.
The matter numbered 55,005 involves a stay order granted by this Court in this same case and which was consolidated with Nos. 54,630 and 54.930.
On the basis of the Court of Appeal judgment of February 6, 1974, (in the matter numbered 54,630 in this Court) reversing the trial court judgment of May 14, 1973 and terminating alimony to the wife, the husband discontinued all alimony payments due thereafter. The wife then filed a rule to cumulate back alimony, for contempt on *908 the part of the husband for failure to pay, and to increase the amount of alimony for her support. Exceptions of lack of jurisdiction and no right or cause of action were filed to the wife's rule. These were overruled, and the trial judge, on June 28, 1974, rendered judgment in favor of the wife for $2,500 cumulated back alimony.
An application for review of the trial court judgment was filed in the Court of Appeal on July 2, 1974 and denied on the same day. In the meantime, however, on July 1, 1974, the trial judge had signed the judgment cumulating past due alimony, casting the husband therefor and finding him to be in contempt of court for nonpayment of alimony, notwithstanding the trial judge had granted the husband until July 3, 1974 within which to apply for remedial writs.
The husband applied to this Court on July 3, 1974 for an order prohibiting the trial judge from signing his judgment of June 28, 1974 cumulating past due alimony. A stay order was granted prohibiting the trial judge from proceeding further with the enforcement or execution of his judgment of June 28, 1974.
Inasmuch as an appeal from a judgment awarding alimony does not suspend the execution of the judgment, La.Code Civ.P. Art. 3943, the husband was not authorized to discontinue alimony payments upon the strength of the Court of Appeal judgment of February 6, 1974 revoking alimony payments. The effect of the Court of Appeal judgment was itself suspended when this Court granted writs to review its correctness. The effective date of the revocation of the alimony due by the husband to the wife is the date the judgment of this Court in these consolidated matters becomes final. Therefore, our order staying execution of the judgment of the trial judge of June 28, 1974 cumulating past due alimony is recalled and set aside.
For the reasons assigned, the judgments complained of awarding alimony to the wife is reversed and the alimony decreed to be due the wife is revoked. It is further ordered and decreed that our order of July 3, 1974 staying execution of the judgment of the trial court cumulating alimony payments is recalled.
BARHAM, J., dissents in part and concurs in part.
TATE, J., dissents in part and concurs in part, and assigns reasons.
DIXON, J., dissents.
TATE, Justice (concurring in part, dissenting in part).
I concur with that part of the opinion which holds that the devolutive appeal by the husband did not stay the wife's right to receive alimony (and collect it by contempt and other proceedings, if necessary). As the majority correctly points out, the court of appeal reversal of the continued-alimony award did not become final until action by this court.
However, I am not certain, from the majority opinion, whether the majority intends to affirm an award of alimony to the wife up to the date of finality of this decree, or instead to decree that no alimony is due effective as to the date of the original divorce decree. If the latter is the intent, then of course the holding described in the first paragraph is meaningless, because the wife collects nothing. I assume the former is the majority's intent.
As to the disallowance of post-divorce alimony, I particularly dissent from the holding that the wife had no right to alimony because she owned an interest in indivision in assets of the former community, a large part of which is a stock interest in a corporation controlled by the husband. I would therefore affirm the initial award of post-divorce alimony.
*909 I agree with the court of appeal, 295 So.2d 52, 53: "Until the estate is partitioned and Mrs. Frederic is placed in possession of liquid, liquidable or income-producing property she has no practical `means for her support' and is entitled in that respect to Article 160 alimony." All previous courts so held, unanimously, and I think it is error to reverse.
A closer question is presented as to whether the wife's right to post-divorce alimony terminated when she received the check for $20,000 from the sale of certain immovable property. 290 So.2d 469.
On authority of Smith v. Smith, cited in the majority opinion, it may be argued that she must spend every last cent of this before being entitled to further alimony-support. I am uncertain that, under the circumstances here, the logical rigor of that opinion should be followed, since, practically speaking, as the trial court found, the receipt of this check did not terminate the wife's need for post-divorce alimony. Perhaps, also, we should re-examine the bases for the holding in Smith v. Smith, as they may be contrary to the intended purpose of Article 160.
For these reasons, I concur in part and dissent in part from the opinion of my respected brothers of the majority.

On Applications for Rehearing
PER CURIAM.
In the application for rehearing of Norman Frederic, the mover raises a question as to the effective date of the revocation of alimony.
As noted in the majority opinion, an appeal from a judgment awarding alimony is devolutive only. See LSA-C.C.P. Art. 3943. Hence, the effective date of the termination of alimony is the date that the judgment of this Court becomes final.
Both applications for rehearing are denied.
NOTES
[1] La.Civil Code art. 160 provides:

"Art. 160. "When the wife has not been at fault, and she has not sufficient means for her support, the court may allow her. out of the property and earnings of the husband, alimony which shall not exceed one-third of his income when:
"1. The wife obtains a divorce;
"2. The husband obtains a divorce on the ground that he and his wife have been living separate and apart, or on the ground that there has been no reconciliation between the spouses after a judgment of separation from bed and board, for a specified period of time; or
"3. The husband obtained a valid divorce from his wife in a court of another state or country which had no jurisdiction over her person.
"This alimony shall be revoked if it becomes unnecessary, and terminates if the wife remarries. (As amended Acts 1964, No. 48, ¶ 1.)"
[2] No reference is made to the award of custody or alimony for a minor child since those awards are not in contest.