REDMANN, Judge.
Is an ex-wife without “sufficient means for her maintenance,” and therefore entitled by La.C.C. 160 to permanent alimony indefinitely, when she owns a house worth (even net of mortgage) about twice the price of a reasonably comfortable house? On an ex-husband’s appeal from a judgment refusing to terminate alimony, we answer that, but for the nonliquidity of that asset, the ex-wife does not lack sufficient means. We therefore order the termination of alimony upon the expiration of the reasonable time within which the ex-wife could overcome her nonliquidity problem.
Alimony for the ex-wife was set in June 1971 at $225 weekly. The most important change in the parties’ situation[1] is that the wife now has a house worth $133,200 (subject to a $41,000 mortgage) that she did not *CDLXII have when alimony was fixed.[2] The ex-wife bought the house, in the New Orleans Garden District, in December, 1971 (for what price the record does not show). The house was appraised in the December 1977 hearing by a qualified expert at $133,200. The ex-wife testified it was mortgaged for $40,000 or $41,000 (leaving her a net value as of December 1977 of over $92,000).
The simple increase in numbers of the dollar value of an ex-wife’s assets is not controlling because the dollar, no longer tied to gold or silver, has no intrinsic value. A house and lot that offered modestly reasonable living quarters ten years ago when its market value was perhaps $25,000 will presumably still offer only modestly reasonable living quarters today when its market value has inflated to $50,000 or so, and presumably an ex-wife should be able to own such a house without disqualifying herself for alimony. But our ex-wife’s 19V2 room house is far more than modestly reasonable living quarters.
An ex-wife is not required to deplete all of her means before they become not “sufficient” within C.C. 160, Smith v. Smith, 1950, 217 La. 646, 47 So.2d 32, and she need not sell her home when it affords her only the reasonably necessary quarters that alimony would have to supply, Nicolle v. Nicolle, La.App. 4 Cir. 1975, 308 So.2d 377. But an ex-husband is not obliged to maintain his ex-wife beyond the “reasonable and necessary” expenses of ordinary living, Bernhardt v. Bernhardt, La.1973, 283 So.2d 226, 229, and would not be obliged to pay alimony including an amount for rent more than reasonable and necessary: and we conclude that he is not obliged to maintain his ex-wife in living quarters clearly more costly than “reasonable and necessary” by paying her alimony while she uses her otherwise sufficient means to provide more than reasonable and necessary quarters.
Our ex-wife’s assets are comparable to the $94,450 of Frederic v. Frederic, La. 1974, 302 So.2d 903, but Mrs. Frederic had $20,700 of liquid assets (cash) while our ex-wife is not shown to have any. Yet we believe the principle of Frederic applicable, because it basically is the principle of Smith,[3] and of C.C. 160 restated: although “sufficient means” does not mean “no means,” it also does not mean “sufficient income.” If $20,000 was sufficient means for Smith in 1950, and $94,450 for Frederic in 1974, then $92,000 is sufficient means for our ex-wife in 1979 (actually 1977; inflation may by now have raised the value of the house to $160,000 and her net asset value to $120,000).
The only difference between Frederic and our case is nonliquidity of our assets, and we hold that nonliquidity can not be allowed to convert the “sufficient means” of the law into “sufficient income.” An ex-wife cannot leave her sufficient means tied up in a house beyond her reasonable necessity, or in vacant land, or in jewelry, and collect alimony indefinitely under a law allowing alimony only when she has not sufficient means, simply because her means are not liquid. Nonliquidity of otherwise sufficient means can at most be accepted as justifying post-divorce alimony only during the period reasonably necessary to convert in part into liquid assets.[4]
The common recital of experts is that six months is a reasonable period to expose immovable property for sale to obtain market value, and perhaps one more *CDLXIII month is a reasonable minimum for title examination and other preparation for taking title thereafter. Thus we conclude that defendant ex-wife should be able to sell her too-large and too-well-located house within seven months. We take judicial notice that a suitable house — not as large and not located in the Garden District or the other premium-priced areas of the city but one that provides “reasonable and necessary” shelter — could be bought in 1977 for substantially less than $92,000 and probably on the order of half that amount. The ex-wife could sell her $133,000 home and buy a “reasonable and necessary” house, leaving a substantial cash reserve to support herself. If she prefers to keep her house (perhaps living in one of its apartments and renting its principal floor), that is no one's business but her own: but she may not at the same time exact alimony as if she did not have “sufficient means” to support herself.
The judgment appealed from is therefore reversed and there is now judgment declaring that Mrs. Sonfield has sufficient means for her maintenance within C.C. 160 and that she is therefore not entitled to alimony, except for the nonliquidity of her means, and there is further judgment eliminating alimony effective seven months from the date of this judgment. Costs of this appeal are to be equally divided.

. Other changes include that the ex-husband no longer held his salaried position which paid $70,000 in 1971. He was starting up his own specialized furniture business, not yet opened, from which he was not as yet earning anything. His income was thus reduced to only $1,450 monthly. The ex-husband had also remarried and had two young children of the second marriage. One further factor that bears mention— though not a change in circumstances — is that the ex-husband was also providing child support for two children by his ex-wife, at a cost of over $10,000 yearly, in respect to which he sought no reduction. The text of C.C. 160 limits the ex-husband’s liability for post-divorce alimony to one third of his income and because of the extreme reduction in income from loss of salaried employment the ex-husband is entitled to some relief. However, it is almost two years since trial, and the new business of the ex-husband will presumably have produced earnings meanwhile so that it would be wrong to simply reduce to one third of $1,450. Moreover, one who has an income of $85,000 one year and then temporarily lacks income because he enters a nonsalaried occupation may not be entitled to compartmentalize his income; C.C. 160 is not worded to limit alimony to a third of the ex-spouse’s weekly or monthly income, for example, but only to a third of income. (One paid one day a month cannot say he has no income the other 29 days; one who clips bond coupons twice a year is not without income ten months out of 12.) Finally, we have the impression from the ex-husband’s counsel in oral argument that the ex-husband’s principal aim on this appeal is a reasonably prompt termination, and reduction is rather an alternative plea. We therefore do not reduce during the period after which termination becomes effective, but the district court may do so on a showing that the ex-husband’s income remains drastically insufficient to pay the ex-wife the amount fixed. The district court retains at all times the right to change the amount of the alimony if circumstances justify a change.

. Had she then owned the house, Bernhardt v. Bernhardt, La.1973, 283 So.2d 226, would possibly oblige to us to continue alimony notwithstanding any increase in value due exclusively to inflation (although increase, e. g., because minerals were discovered would be a true change in circumstances requiring reconsideration of the fixing).

. Frederic, 302 So.2d 907, characterized Smith as a case of “no liquid assets.” The Smith assets were government bonds, a car, and notes of the ex-husband. We deem the bonds relatively liquid compared to a house.

.La.Acts 1979 No. 72 (not applicable to the trial of this rule) amends C.C. 160 to require consideration of the liquidity of the spouses’ assets in determining the entitlement to and amount of post-divorce alimony.