385 So.2d 232 (1980)
Robert I. SONFIELD
v.
Anita DELUCA, wife of Robert I. Sonfield.
No. 66610.
Supreme Court of Louisiana.
June 23, 1980.
*233 Gibson Tucker, Jr., Tucker & Schonekas, New Orleans, for defendant-applicant.
Philip R. Riegel, Jr., Parlongue & Riegel, New Orleans, for plaintiff-respondent.
MARCUS, Justice.
On November 22, 1977, Robert I. Sonfield filed a rule against his former wife, Anita Deluca Sonfield, to show cause why alimony in the amount of $225.00 per week previously awarded in a judgment of divorce dated June 30, 1971,[1] should not be terminated. In his rule, he alleged three changes in circumstances: (1) he has remarried and is the father of two minor children in his second marriage; (2) he is no longer gainfully employed and has suffered a substantial reduction in income; and (3) his ex-wife is no longer in necessitous circumstances because she owns a home appraised at $133,200 subject to a $41,000 mortgage.
After a hearing on the rule, the trial judge refused to terminate alimony and ordered plaintiff to continue paying his ex-wife $225.00 per week in alimony. The court of appeal reversed, holding that plaintiff's ex-wife's equity of approximately $92,000 in her home was "sufficient means" for her support and she was therefore not entitled to alimony; however, because of the non-liquidity of the home, the court gave defendant seven months in which to sell her home at which time alimony would cease whether or not the house was sold.[2] On defendant's application, we granted certiorari to review the correctness of this decision.[3]
La.Civ.Code art. 160[4] provides:

*234 When the wife has not been at fault, and she has not sufficient means for her support, the court may allow her, out of the property and earnings of the husband, alimony which shall not exceed one-third of his income when:
1. The wife obtains a divorce;
. . . . .
This alimony shall be revoked if it becomes unnecessary, and terminates if the wife remarries.
Article 160 has been construed to allow the wife to collect a sum sufficient for her "maintenance," which includes expenses for food, clothing and shelter as well as reasonable and necessary transportation or automobile expenses, utilities, household expenses and income tax liability generated by the alimony payments made to the former wife. To prevail, it is incumbent upon plaintiff to prove a change in defendant's circumstances, or his own, from the time of the divorce decree to the time of the rule which justifies termination of his ex-wife's alimony. Bernhardt v. Bernhardt, 283 So.2d 226 (La.1973).
We agree with the finding of the trial court that placed little emphasis on the expenses of plaintiff's second marriage. While these expenses, like other circumstances, should be taken into account in determining the amount of alimony plaintiff must pay, we are unable to see how these expenses could completely negate his obligation to support his ex-wife under art. 160. See Marcus v. Burnett, 282 So.2d 122 (La.1973).
We also agree with the trial court's finding that plaintiff's financial situation does not warrant termination of alimony. Plaintiff held the position of president of a large department store at a salary of $70,000 per year at the time alimony was fixed in 1971. He no longer held this position at the time of trial, and his income had been reduced to $1,450 per month. However, plaintiff testified that he was in the process of organizing his own specialized furniture business which he expected to be quite successful. The record indicated plaintiff was able to secure a $300,000 loan in order to begin operations. The trial court considered all of plaintiff's assets (including a large uptown home valued at $325,000) and reached the conclusion that his ability to pay the $225.00 per week alimony had not changed sufficiently to warrant the termination of alimony. We find no manifest error in this finding.
The primary issue of our concern is whether the court of appeal was correct in finding that defendant's equity in her home was so substantial that she was no longer entitled to alimony from plaintiff. Defendant purchased the home in the New Orleans Garden District in 1971 after her divorce from plaintiff. The house consists of three living units: a main living unit with two bedrooms where defendant resides, a rear one-bedroom apartment and a basement apartment. Defendant testified that the apartments net less than $50.00 per month after an allocation of utilities and mortgage payments is made. Because of the high desirability of the neighborhood and the increased value of real estate, defendant's home was appraised at $133,200. The mortgage had been reduced to approximately $41,000.
In Smith v. Smith, 217 La. 646, 47 So.2d 32 (1950), this court found that an ex-wife's ownership of $20,000 in assets, composed of United States Government War Bonds and other interest bearing notes was sufficient to enable her to support herself without alimony. In Frederic v. Frederic, 302 So.2d 903 (La.1974), we found that $94,450 in assets, $20,700 of which was cash, belonging to the ex-wife was sufficient means for her support and alimony was not allowed. In Loyacano v. Loyacano, 358 So.2d 304 (La. 1978), on rehearing, 358 So.2d 314 (La.1978), we held that the factors to be considered in making the proper determination of the amount of alimony include: the income, means and assets of each spouse; their respective financial obligations; their earning capacities; the liquidity of their assets; health and age of each spouse; time necessary to acquire education or training; restraints due to child custody; and any other relevant consideration.
*235 In this case, defendant has no such liquid assets. Her one asset is her home. It provides reasonable, not lavish, shelter for her and one minor daughter (age seventeen) of their marriage; the other child (age nineteen) suffered brain damage at birth and lives in a special school, but occasionally occupies the home on visits. The court of appeal found that defendant's $92,000 equity in the house was much greater than the cost of an average home and that plaintiff was not obligated to furnish her with anything beyond that which was "reasonable and necessary." The court of appeal's decision would force defendant to sell her home and exhaust the equity for her support until such time as she again needed to be totally dependent upon plaintiff. We do not agree.
We note that defendant has not received an increase in alimony since 1971 during which time the cost of living has increased drastically. Rather than rent a house or apartment and then make demand for increased alimony to offset increases in rent, defendant purchased a home that proved to be a very wise investment. As owner, she is not subject to rent increases and the house contains two apartments that provide a modest income to defendant that also enables her to support herself without demanding an increase in alimony. The arrangement thus works to plaintiff's benefit.
Defendant received, in addition to the small amount of rental income, about $800.00 in 1977 in her career as a real estate agent; however, her continued illness prevented her from working full time. While defendant's home ownership relieves plaintiff of the burden of furnishing her with shelter, the trial court found that she was still in need of alimony for other necessities; therefore, the trial court refused to terminate alimony as prayed for and continued the alimony at $225.00 per week to cover those expenses. Under the circumstances, we are unable to say that the trial court abused its discretion in reaching this result. The court of appeal erred in holding otherwise.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and set aside, and the judgment of the district court is reinstated.
LEMMON, J., recused.
NOTES
[1] The 1971 divorce judgment also required Mr. Sonfield to pay $40.00 per week plus other benefits as child support to Mrs. Sonfield who was awarded custody of the two children. Mr. Sonfield stated that he computed this amount to be approximately $10,300 per year. No request to reduce child support was made.
[2] 377 So.2d 380 (La.App. 4th Cir. 1979).
[3] 380 So.2d 93 (La.1980).
[4] Since the time of trial of plaintiff's rule, La. Civ.Code art. 160 was amended by Acts 1979, No. 72, § 1, effective June 29, 1979.