PONDER, Judge.
Defendant, Mr. Champagne was ordered to pay $75.00 per week in alimony to plaintiff by divorce judgment in 1973. Defendant has attempted unsuccessfully several times to have this alimony reduced. Most recently, in 1980, he filed a rule to show cause why the alimony should not be revoked or decreased. Mrs. Champagne filed an answer, requesting an increase in alimony and attorney fees for defense of the rule.
The trial court dismissed Mr. Champagne’s rule at his cost; it made no mention of Mrs. Champagne’s reconventional demand.
Mr. Champagne appealed; Mrs. Champagne answered the appeal.
The sole issue raised by Mr. Champagne’s appeal is whether the alimony award should be completely revoked on the ground that the liquidation of Mrs. Champagne’s real estate holdings would provide sufficient means for her maintenance.
In the community property settlement, Mrs. Champagne obtained her ex-husband’s interest in their family home, presently valued at $32,000 to $35,000. It is located only a very short distance from her daughter’s house, where Mrs. Champagne sleeps each night. Mrs. Champagne maintains her clothing, other personal possessions, furniture, and some food at the family home. She readily admitted that this situation has existed for several years, but submits that she has no guaranty that she will be able to continue to spend so much of her time with her daughter, who is married and has a family of her own.
*720 In addition to the family home, Mrs. Champagne inherited a house, presently valued at approximately $30,000. Rental of the house provides Mrs. Champagne with income of $200 per month. An additional apartment, presently not rented, is in need of repairs because it floods during rain.
Mrs. Champagne itemizes her living expenses at $437 per month. Mr. Champagne asserts that $82 of these expenses are for non-allowable items, leaving a total of $355. Hence, even according to his calculations, the $200 per month in rental income is not sufficient means for Mrs. Champagne’s maintenance; and she is, therefore, in need.
However, Mr. Champagne’s argument that, if the rental property were sold for $30,000 and invested at an 8% annual interest rate, Mrs. Champagne would realize the same amount in interest income as she presently receives in rent, without the necessity of expending money for the maintenance of the property. This theory, however, does not consider the cost of settling the succession of Mrs. Champagne’s mother, which she estimates at $1,500. Neither does it consider tax liability upon the sale of the property. Both of these expenses would significantly reduce the net amount realized from the sale of the rental property and, therefore, reduce the amount of possible investment income.
Mr. Champagne further argues that sale of both the family home and the rental property and the subsequent investment of the proceeds would generate sufficient income for Mrs. Champagne to meet her present monthly expenses. However, this theory, once again, fails to consider tax liability upon sale of the properties. Moreover, the theory assumes that Mrs. Champagne could reside completely with her daughter’s family for the rest of her life.
No testimony was adduced regarding either the ability or willingness of the daughter and her family to assume permanent responsibility for the complete shelter of Mrs. Champagne. There is no evidence regarding the size of the daughter’s house, the feelings of the daughter and her family on the subject, nor even where Mrs. Champagne presently sleeps — whether in a separate bedroom, on a couch in a family room, etc. Mrs. Champagne testified that she has no guaranty that she will be able to continue to spend so much of her time with her daughter. The record simply does not justify a finding that Mrs. Champagne has the option of continuing to maintain her own home or moving completely to her daughter’s house. Without such an option, sale of the family home may necessitate expenditures for other housing for Mrs. Champagne.
A wife need not always sell her real estate holdings in order to qualify for alimony. Kean v. Kean, 388 So.2d 398 (La.App. 1st Cir. 1980); Petty v. Petty, 372 So.2d 805 (La.App. 3rd Cir. 1979). Moreover, only when large sums are tied up in excessive housing will the continued possession of a home be considered sufficient means to defeat alimony. Kean v. Kean, supra. See also Sonfield v. Deluca, 385 So.2d 232 (La.1980). We find no abuse of discretion in the trial court’s decision. See Sonfield v. Deluca, supra.
Mr. Champagne opposes any increase of alimony and any award of attorney fees both on the merits and on the basis that the question of “an increase in alimony is not before the court because a rule therefor was not made, heard or decided ...” Mrs. Champagne’s demand for an increase in alimony was made in the answer to the rule. Her attorney before presenting any testimony made the statement that “we have allowed the rule and asked for an increase ...” No objection was made either then or upon the presentation of the evidence. In written reasons the court said it “feels that Mrs. Champagne is not entitled to an increase in alimony ...” Under these circumstances, we hold that Mr. Champagne waived any objections he had, and that the court heard and decided her demand. It is true that the signed judgment made no reference to the demands for an increase in alimony and for. attorney fees. However, under the facts of this case, we hold that the failure to mention the demands was a denial thereof. Rains v. *721 Thomason & Champion, 135 So. 92 (La.App. 2d Cir. 1931); Blanchard v. Arkansas Louisiana Gas Co., 51 So.2d 850 (La.App. 2d Cir. 1951).
Although plaintiff asked for an award of attorney fees in her answer to appeal, she did not mention the subject in her brief. We therefore consider the request abandoned. At any rate we find no merit therein. See Bruner v. Bruner, 373 So.2d 971 (La.App. 2d Cir. 1979).
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of these proceedings are to be borne by appellant.
AFFIRMED.