421 So.2d 1185 (1982)
Michael C. TABOR, Plaintiff-Appellee,
v.
Judy Gail TABOR, Defendant-Appellant.
No. 15024.
Court of Appeal of Louisiana, Second Circuit.
October 25, 1982.
*1186 M. Randal Fish, Bossier City, for defendant-appellant.
Whitmeyer, Thomas & Glassell by Claudius E. Whitmeyer, Shreveport, for plaintiff-appellee.
Before MARVIN, JASPER E. JONES and NORRIS, JJ.
MARVIN, Judge.
The mother appeals a judgment awarding custody of her three-year-old daughter to the father, contending that the trial court abused its discretion. We affirm.
The child was born in December 1979 following the parents' marriage in 1975. The parents separated in fact about July 1, 1981, and the father shortly thereafter moved to Amarillo, Texas, for about three months before returning to Shreveport and resuming his former job.
The mother admits that she and the child lived in a mobile home with her paramour, J.R., from September 1981 until late January 1982, that J.R. leased an apartment in expectation of their marriage and listed himself, the mother, and her child as the persons who would occupy the apartment. She admitted her adulterous relationship with J.R. after first contending that they occupied separate bedrooms in the mobile home, and does not contest the divorce awarded her husband on these grounds. She acknowledges that she and the child visited the leased apartment after February 1, 1982, but contends that she and J.R. ceased having sexual relations after moving from the mobile home because of reasons of conscience. She said that she had lived with her mother and sometimes with her former sister-in-law after moving from the mobile home. The apartment of the ex-sister-in-law is in the same complex as J.R.'s apartment.
J.R. testified that he "supported" the mother and the child for about three months before they moved in with him in September 1981. It is shown that the father contributed to the support of the family during this time and that the mother went to Amarillo to obtain some support money from him. Since the separation, the mother worked for varying periods up to *1187 three months in about three jobs before accepting part time work in a store owned by relatives. The father, with the exception of the job in Amarillo, has held the same job since he graduated from high school. His employer testified that he was respected, stable, and dependable.
The trial court considered the intention of the mother and J.R. to marry when J.R.'s divorce would occur in late 1982. The trial court found that the mother continued to "live with" J.R. after they moved from the mobile home and that she deliberately lied about this relationship. When construed as continuing to live in open concubinage, this finding is not supported by testimony. The mother admitted that she made several daytime visits with J.R. in the apartment. This admission circumstantially supports the trial court's implied finding that the adulterous relationship continued after the move from the mobile home.
The mother argues that she was "discreet" about her relationship with J.R., that she allowed herself and the child to be presented as J.R.'s wife and daughter to neighbors and landlord and concealed the relationship to her close friends and relatives to avoid any reflection on the child. The mother asserts that "nothing" has occurred in the presence of the child, that there is no suggestion of possible detrimental effect on the child, and that J.R. loves and cares for the child and intends to marry the mother and to help raise the child. She argues that the trial court abused its discretion and sought to "justify" the award of custody to the father by deciding every contested factual issue against the mother. This argument strongly implies that the trial court purposely ignored and disregarded evidence favorable to the mother. The mother contends that the only real reason for the award was the mother's adultery, which in the absence of a showing of detriment, actual or potential, to the child, is not legally sufficient to support the award. We cannot agree.
In this vein, the mother also contends that she has been the primary nurturing parent, who, since the birth of the child, has continuously loved and cared for the child, and that it would be harmful to the child to break the stable relationship and close bond between her and the child.
The difficulty of child custody cases is most recently illustrated in Bagents v. Bagents, 419 So.2d 460 (La.1982), a 4-3 decision by our highest court. There the mother, with her five-year-old child, had been living in open concubinage with W.B. She moved out of his apartment shortly before trial of the custody rule. After the custody hearing, she married W.B. We adopt here the supreme court's observations about the law:
"The principal consideration in every child custody case is the best interest and welfare of the child. Past misconduct and moral unfitness, demonstrated in this case by the mother's open concubinage in the home with the child, is a valid basis for determining the present suitability of a parent.... The present case is complicated by the fact (stipulated at the hearing on the motion for new trial) that the mother married her paramour as soon as it was legally possible to do so, thus eliminating the detriment from the child's living in the environment of an illicit relationship. However, the marriage did not represent a change in the mother's moral values or a desire to reform, and the trial judge on motion for new trial refused to recall the change of custody, again stressing that it was not in the best interest of the child to be raised by a parent with this mother's selfish attitude and immoral outlook.
"In performing its function of deciding custody cases, the trial court is vested with a vast amount of discretion. On appellate review, great deference must be accorded to the decision of the trial court, not only because of that court's better capacity to evaluate witnesses, but also because of the proper allocation of trial and appellate functions between the respective courts....
"The decision reached by the trial court in this case is not necessarily the decision that the individual judges of this court *1188 would have reached. Nevertheless, this court's function is not to substitute its collective decision for that of the trial court, but to review the decision for error of law. We cannot say in this case that the trial court erred as a matter of law in deciding that a change of custody was in the child's best interest." 419 So.2d at pp. 462-463. Citations omitted.
In civil appeals, our review extends to facts and law. LSA Constn. Art. 5, § 10(B). We recognize the difficulty and futility of attempts to reconcile the many reported opinions in child custody disputes. Appellate courts cannot and do not lay down hard and fast rules and guidelines in these cases and counsel should not take a factor or legal principle from one case and assert that factor or principle as controlling in another case because each case deals with a peculiar parental relationship which will exist prospectively, and then only as long as the circumstances in the relationship do not change in the future. The only common features in these cases are the principles that each case must be determined on its own facts, that the trial courts shall make the determination on the best interest of the child, and that, in the absence of a showing of a clear abuse of discretion, the appellate court will uphold the trial court's judgment. Bagent, supra. See and compare Nale v. Nale, 409 So.2d 1299 (La.App. 2d Cir.1982) and James v. James, 409 So.2d 1297 (La.App. 2d Cir.1982). In all cases, the appeal is from the judgment, and not from the trial court's reasons for the judgment. CCP Arts. 2082-2083; State, in Interest of Mason, 356 So.2d 530 (La.App. 1st Cir.1977).
The trial court determined that it was in the best interest of the child to award custody to the father. This determination was made because the mother lived in open concubinage, at least until January 29, 1982, and, although not openly, she continued her relationship with her paramour thereafter and sought to deceive the court about the extent of her relationship with her paramour before and after that date.
Except to the extent modified here, for the reasons assigned below which we have summarized, the judgment is AFFIRMED at appellee's costs.