475 So.2d 48 (1985)
Dienna Jean CARROWAY, Plaintiff-Appellee,
v.
Ronald Dean CARROWAY, Defendant-Appellant.
No. 17077-CA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1985.
*49 James L. Fortson, Shreveport, for plaintiff-appellee.
Love, Rigby, Dehan, Love & McDaniel by William G. Nader, Shreveport, for defendant-appellant.
Before HALL, SEXTON and NORRIS, JJ.
NORRIS, Judge.
This is an appeal from a judgment on a rule to change child custody and support. The trial court's original plan gave domiciliary custody of the three-year old son, Robby, to the mother, Mrs. Carroway, leaving to Mr. Carroway alternate weekends and holidays. Mr. Carroway appealed, contending that the weekend plan did not satisfy the requirements of joint custody under LSA-C.C. arts. 146 and 157. We reversed and remanded, with instructions to find more facts and to fashion a plan that more meaningfully implemented joint custody. Carroway v. Carroway, 441 So.2d 494 (La. App. 2d Cir.1984). The parties returned to court and adduced evidence. The trial court fashioned a new custody plan for Robby, who is now six years old, and increased the child support. The father now appeals. For the reasons expressed, we affirm.
In the revised plan of implementation, the mother, who is now remarried as Mrs. Montgomery, is the principal custodial (domiciliary) parent and the father has custody between specified hours every other weekend. In this respect, the new plan is not different from the original plan which we disapproved in the first opinion. The father, however, also has custody for ten weeks during the summer, subject to the mother's visitation every other weekend; about one week around New Years Day; alternating holidays; every Father's Day; every birthday; and a few hours of babysitting every Wednesday or Thursday night. The revised plan incorporates the previous plan's provisions for communication and exchange of information.
The father contends on appeal that this arrangement is a mere embellishment of the original alternate-weekend visitation plan. The addition of extra custodial time during the summer and Christmas vacations, he contends, is not sufficient to ensure frequent and continuing contacts between him and Robby, and does not amount to a sharing of physical custody. He proposed, and the trial court rejected, a plan whereby each parent would have domiciliary custody for alternating four-month periods, with provisions for visitation with the noncustodial parent. He contends that his rejected plan is more consonant with the mandate and clear legislative intent of article 146, which establishes a presumption that joint custody is in the best interest of the minor child.
Actions for permanent custody are resolved by the same factors as apply to cases of provisional custody. LSA-C.C. art. 157. Provisional custody is explained in LSA-C.C. art. 146. This article makes joint custody the first order of preference, placing it above sole custody and nonparent custody. It further establishes a presumption that joint custody is in the best interest of the child, although this presumption can be rebutted after a consideration of the eleven factors listed in subsection C(2), bearing upon the unique relationships of each case, the moral fitness of the parties, and other matters.
The eleven factors serve first as a vehicle for rebutting the presumption of joint custody. The father's first argument is that the facts adduced for these factors did not rebut the presumption. We agree. The evidence shows, in a nutshell, that both parents are morally sound and fit, love Robby very much and want to spend as much time with him as possible. Both are remarried to spouses who like Robby; both can provide him with a wholesome home environment. They agree on matters of Robby's dental and medical care, as well as his course of religious upbringing. Both testified they wanted Robby to attend the *50 Montessori school and are willing to pay for this program. The record makes it abundantly clear that the parties are entitled to a judgment of joint custody.
We do not agree, however, with the second phase of the father's argument, where he contends that the plan of implementation is not joint custody. On the contrary, we think it satisfies the minimum requirements of providing for physical sharing of the child. The allotment of child custody is an imprecise science. We cannot formulate a general, universal rule to draw a bright line between what is and what is not a joint custody plan. The legislative mandate presents us with the paradox of imposing a sharing of physical custody between parties who are no longer in a position to share. Any plan is vulnerable to attack on grounds that it is episodic, serial and disruptive, rather than joint. We are guided, however, by the overriding principle that a joint custody plan must guarantee frequent and continuing contacts between the child and both parents. LSA-C.C. art. 146 D. We are also guided by the jurisprudence holding that an equal 50/50 sharing of custodial time is not necessary. Cole v. Cole, 467 So.2d 872 (La. App. 2d Cir.1985); Hickman v. Hickman, 459 So.2d 140 (La.App. 2d Cir.1984); Adams v. Adams, 441 So.2d 490 (La.App. 2d Cir.1983); Plemer v. Plemer, 436 So.2d 1348 (La.App. 4th Cir.1983). Under these standards, the old-fashioned plan of sole custody with visitation one weekend a month falls far short of joint custody. On the other hand, we are convinced that only a substantial equality of time is mandated, without offending the legislative scheme. Adams v. Adams, supra.
Under the modified full-summer plan ordered by the trial court, Robby will spend ten weeks of summer vacation and several days of Christmas vacation with his father, as well as alternate weekends and holidays, and every Wednesday night. This plan does not give the father equal time, but it reaches the objective of physical sharing of the child. It provides for weekly contact with the child on a school night, so the father is not deprived of the opportunity to hear about Robby's school activities first-hand. Although it does not provide for even 50/50 sharing, this schedule satisfies the minimum requirements of joint custody.
The article 146 C(2) factors serve a second purpose as points of reference in formulating a joint custody plan within the bounds of reasonably shared physical custody. If one party receives more custodial time than the other, then the allocation must be justified by a consideration of these eleven factors. We admit that each of the eleven considerations ran very close in this case, but we cannot say the trial court abused its discretion.
We first note that the mother has had principal custody of Robby ever since the divorce. Right or wrong, this original scheme has created a pattern of togetherness, and the trial court correctly sought stability by not radically upsetting things. LSA-C.C. art. 146 C(2)(d). Further, even though the parties live only fifteen miles apart, the mother lives closer to the school they have selected for Robby. LSA-C.C. art. 146 C(2)(k) & (h). The trial court was entitled to place some weight on the relative convenience of the parties in the burdensome matter of school transport. The integrity of the standard nine-month school year is also a legitimate factor. Peyton v. Peyton, 457 So.2d 321 (La.App. 2d Cir. 1984). It is within the trial court's discretion to avoid splitting the school year under the appropriate circumstances.[1] A final factor is the father's admission on direct examination that he did not oppose or disapprove of the modified full-summer plan.[2] *51 The trial court was certainly entitled to consider this attitude in setting the plan of implementation. LSA-C.C. art. 146 C(2)(l).
We reiterate the trial court's great discretion in setting plans of joint custody. Stephenson v. Stephenson, 404 So.2d 963 (La.1981); Hickman v. Hickman, supra. Each case is unique and the trial court is in the best position to assess the peculiar facts and relationships involved. As we stated in Tabor v. Tabor, 421 So.2d 1185 (La.App. 2d Cir.1982):
... We recognize the difficulty and futility of attempts to reconcile the many reported opinions in child custody disputes. Appellate courts cannot and do not lay down hard and fast rules and guidelines in these cases and counsel should not take a factor or legal principle from one case and assert that factor or principle as controlling in another case because each case deals with a peculiar parental relationship which will exist prospectively, and then only as long as the circumstances in the relationship do not change in the future. The only common features in these cases are the principles that each case must be determined on its own facts, that the trial courts shall make the determination on the best interest of the child, and that, in the absence of a showing of a clear abuse of discretion, the appellate court will uphold the trial court's judgment.
421 So.2d at 1188.
We are unable to conclude that the trial court abused its discretion here. If we were deciding this case on a clean slate, using only the cold record, we would perhaps be inclined to construct a plan that calls for more equal sharing. But the trial court, favored with a live presentation of testimony and a keener perception of this controversy and its participants, concluded that a different plan was advisable under the circumstances. We will not disturb its judgment.
The father also contends that the trial court placed too much emphasis on the testimony of an expert clinical social worker, Mr. Donald Heacock. Mr. Heacock had met Mrs. Montgomery four times, twice with Robby; he testified that under usual circumstances, a 50/50 sharing was not feasible. Mr. Carroway contends that the expert's prejudice against equal sharing, coupled with his inadequate exposure to the facts of the case, cast so much doubt on his testimony that the trial court should have discounted it. We agree that the trial court placed some emphasis on Mr. Heacock's testimony. But this emphasis was not reckless or ill-advised, as appellant seems to assert. In assessing Mr. Heacock's testimony about the disruptive effect of frequent domiciliary changes, the trial court referred to it as a "fact which I think anyone would realize." Thus the trial court relied partly on the common-sense value of Mr. Heacock's testimony, which was not contradicted at trial. The trial court has great discretion to hear and weigh expert testimony by the same standards as other evidence. Hickman v. Hickman, supra; Braxton v. Georgia Pacific Corp., 419 So.2d 125 (La.App. 2d Cir. 1982), writ denied 423 So.2d 1150 (La.1982). Reliance on the expert to the extent shown here was not error.
In his final specification of error, Mr. Carroway contends that the trial court erred in raising his child support obligation from $150 to $300 a month. Mrs. Montgomery had filed an affidavit claiming she spent $700 a month on Robby, but the trial court found her expenses were nearer to $436 a month. The trial court noted that *52 when it formulated the original award, Robby was three years old and not in school. Robby now attends the Montessori school at a tuition of $148 a month. The trial court further noted that Mr. Carroway's income has almost tripled since the original decree. Mr. Carroway's household gross income is approximately $3,500 a month; Mrs. Montgomery's is about $2,500.
Child support awards are governed by LSA-C.C. arts. 227 and 231, which provide:
Art. 227. Fathers and mothers, by the very act of marrying, contract together the obligation of supporting, maintaining, and educating their children.
Art. 231. Alimony shall be granted in proportion to the wants of the person requiring it, and the circumstances of those who are to pay it.
In setting child support, the court may consider all the appropriate circumstances. Marcus v. Burnett, 282 So.2d 122 (La. 1973). We think the circumstances of the father's substantially increased income and the child's increased tuition expenses, which the father approves of, justify an increase in child support. We find no abuse of discretion in the $300 award.
The parties informed us at oral arguments that since the trial court doubled the child support award, they have been back in court on yet another child support rule. This subsequent litigation resulted in a judgment reducing support to $250 a month. Although the later award is not properly before this court, it was within the trial court's discretion, given the proven costs of raising the child and the relative financial circumstances of the parents.
Accordingly, the judgment appealed from is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] We would like to be able to share the parties' sanguine assurances that they will always agree on the Montessori school. However, Mr. Carroway is opposing an increase in child support that plainly covers the proven tuition at the school. This puts a sufficient blemish on the Montessori proposition to counsel against splitting the school year.
[2] Mr. Carroway testified as follows:

Q. In terms of a residential custody plan, Mr. Carroway, we understand that what [sic] you are submitting in your plan. Do you have an alternative plan that you would be willing to undergo or undertake in terms of residential custody?
A. Yes, sir. I would be willing to go with the full summer type plan with Mrs. Montgomery having every other weekend. There would be no problem with that as far as I am concerned.
Q. Having him during the school summer session; is that correct?
A. Yes, sir.
Q. Subject to her seeing him every other weekend?
A. Yes, sir.