488 So.2d 1147 (1986)
Dorothy W. KEY, Plaintiff-Appellee,
v.
Donald R. WILLARD, Defendant-Appellant.
No. 17815-CA.
Court of Appeal of Louisiana, Second Circuit.
May 7, 1986.
Rehearing Denied June 5, 1986.
*1148 Dimos, Brown, Erskine, Burkett & Smith by Donald R. Brown, Monroe, for defendant-appellant.
Blackwell, Chambliss, Hobbs & Henry by James A. Hobbs, Monroe, for plaintiff-appellee.
Before MARVIN, SEXTON and NORRIS, JJ.
MARVIN, Judge.
On May 28, 1985, this court increased by $85 per month the child support that had been awarded by the lower court but did not decree the date when the increased award was to be effective. Key v. Willard, unpublished opinion on rehearing, 471 So.2d 324 (La.App.2d Cir.1985).
As the sequel to that proceeding, in this appeal of a later judgment of the lower court, the father complains first that he should not have been cast for the $85 per month arrearage (totaling $1,105) for the 13 months from the mother's initial judicial demand to the date our 1985 opinion became final and definitive. CCP Art. 3943. See also LRS 9:310.[1]
The father secondly complains that the trial court should not have rejected his demands that the joint custody decree that had been in effect for three years (nine months to mother and three months to father) should be modified to achieve more equal custody, or six months to each parent. The son, whose custody and support have been at issue since 1981, is now 14 years old.
We affirm, with slight amendment to allow on the arrearage a credit stipulated in favor of the father but which was apparently overlooked by the trial court. CCP Art. 2164.

FREDERIC V. FREDERIC REVISITED
The mother's 1984 appeal of the judgment that denied her increased child support did not suspend the effect of the trial court's support judgment. CCP Art. 3943. Thus, the father's obligation, pending the appeal, was fixed solely by the trial court's judgment denying the mother a support increase until our 1985 judgment increasing the support became definitive. Frederic v. Frederic, 302 So.2d 903 (La.1974).
The courts of this state have struggled to reconcile the above rule with the general power of an appellate court to grant any relief that is just, legal and proper upon the record. CCP Art. 2164. The struggle arises when the "effectiveness" of the original judgment pending appeal is weighed against the power of the appellate court to *1149 order either payment or reimbursement of a different amount that may result from a modification of the trial court judgment by the court of appeal. See and compare Frederic, supra; Wasson v. Wasson, 439 So.2d 1208 (La.App. 1st Cir.1983), writ denied; Bruner v. Bruner, 373 So.2d 971 (La.App.2d Cir.1979); O'Brien v. O'Brien, 347 So.2d 1288 (La.App. 1st Cir.1977), and Oliver v. Oliver, 417 So.2d 1278 (La.App. 1st Cir.1982), writ denied.
Frederic held that the "effectiveness" of a judgment awarding alimony required the obligor spouse to continue paying the alimony during the interim between an appellate court judgment reversing the award of alimony and the affirming of the appellate judgment by the Louisiana Supreme Court. Under Frederic, the alimentary obligation did not terminate and the obligor spouse was not entitled to cease paying the alimony until the judgment of the appellate court reversing the award became definitive.
In Bruner, we affirmed the trial court's award of a permanent alimony arrearage where the obligor spouse had discontinued alimony payments during the period following our reversal of the award and final disposition of the obligee spouse's writ application by the supreme court. Citing CCP Art. 3943 and Frederic, Bruner also rejected the obligor spouse's contention that he was entitled to credit against permanent alimony arrearage for "overpayments" of alimony pendente lite he had made before this court's reduction of the trial court's alimony pendente lite award. We said that the amount of alimony pendente lite awarded below was "owed" until the appellate judgment reducing that alimony became final or definitive. We did not consider the effect of a modification either of pendente lite alimony against pendente alimony or of permanent alimony against permanent alimony.
Frederic was interpreted in a similar fashion in Oliver, supra, and Macip v. Wallace, 381 So.2d 869 (La.App.3d Cir.1980). In Oliver, the court denied the award of any arrearage to a claimant spouse who successfully reversed on appeal a trial court judgment that denied her alimony. Oliver reasoned that if Frederic allowed a successful claimant spouse to be paid pending the obligor spouse's appeal, then the successful obligor spouse was entitled not to pay pending the obligee spouse's appeal. Writs were denied, with comment from Justice Lemmon. See Oliver v. Oliver, 421 So.2d 1124 (La.1982).
Before Oliver, the First Circuit in O'Brien affirmed to allow an arrearage award to a claimant spouse who successfully appealed a denial of alimony. Without citing Frederic, O'Brien reasoned that appellate reversal of an alimony judgment nullifies it and leaves the case standing as if it had never been rendered. In Wasson, however, the First Circuit followed O'Brien, distinguished Frederic, and overruled Oliver, by reversing a trial court judgment that denied a support arrearage to a custodial spouse who, like the mother in this appeal, had succeeded in an appeal to increase support. Wasson interpreted CCP Art. 3943 and Frederic as governing only the obligations of the litigants pending an appeal and not the rights of the litigants to reimbursement or arrearages after definitive appellate review. Wasson emphasized that the obligor spouse in Frederic was not seeking reimbursement for sums he had already paid under the erroneous trial court judgment.
Concurring, Judge Lanier stressed that appellate courts can and should "grant the relief initially sought, rather than only prospective relief." 439 So.2d at 1213. Writs were denied in Wasson.
Like Wasson, we do not now interpret Frederic and its progeny either as limiting our discretion to fix the effective date of our judgment that modifies an alimony or support award or as limiting the power of a trial court to later award an arrearage or reimbursement in some amount that may result from appellate modification. This discretion allows courts, in retrospect, to evaluate the obligee's needs for the accrued sum and the support obligor's ability to pay the accrued sum. A *1150 support obligee's need during the period in which he or she successfully appeals a denial of support may justify an arrearage award in whole or in part in some circumstances and not in others. Similarly, a support obligor already burdened with support payments to an obligee, who is determined on appeal not to be in need, in some cases, may be entitled to reimbursement, in whole or in part, for the amount paid under a trial court judgment that is deemed erroneous on appeal.
In any event, the relative financial positions of the litigants and the duration of the appeal are factors which should be considered in determining whether and in what amount an arrearage or reimbursement should be decreed. We should not extend the interpretation of Frederic and Bruner to preclude consideration of these factors or to impose hardship on one litigant and a windfall to the other.
This court could have made its 1985 increased support retroactive to a selected date without violating the rule of CCP Art. 3943 or of Frederic. The fact that we did not set an effective date, however, should not prohibit a trial court from later decreeing the increase effective retroactively to a selected date. We approved such a procedure in Cumpton v. Cumpton, 283 So.2d 846 (La.App.2d Cir.1973). There a trial court judgment awarded a spouse $350 per month alimony pendente lite. The judgment did not specify when the obligor spouse was to begin paying. Four months later, the obligee spouse sought a judgment for the "arrearage," contending that alimony was due and payable from the date of her judicial demand. The trial court concluded the effective date for payments to begin was the date of judgment. This court affirmed, saying
Compelling reasons may be presented to the court leading to a conclusion it would be impractical and inequitable to commence accrual of alimony ordered in the decree at the retroactive date of judicial demand. We know of no reason why a trial judge should not be accorded the same discretion in specifying a commencement date for alimony payments as he is given in determining the needs of the wife and ability of the husband to pay.
Should a judgment ordering payments of alimony [support] not provide for commencement retroactive to date of judicial demand, it must be presumed the court intended it to be effective on the date of rendition. 283 So.2d at 848 (Emphasis added.)
Cumpton was approved and followed in other circuits. Mullen v. Mullen, 422 So.2d 195 (La.App. 4th Cir.1982); Richard v. Richard, 359 So.2d 696 (La.App. 1st Cir. 1978).
We later interpreted Cumpton to allow an appellate court
... the same wide discretion in decreeing the effective date of its reversal or modification of a trial court judgment with reference to alimony pendente lite. For example, if we reverse a trial court judgment denying alimony pendente lite altogether, there seems no question but that we may as a discretionary act, make the award retroactive to the date of judicial demand or at least to the date of the trial court judgment denying the award. * * *
... The fact that a suspensive appeal may not be taken from a judgment relating to alimony in no way inhibits the possibility of retroactive effect being given to this judgment. Wilhite v. Wilhite, 408 So.2d 973 at 977 (La.App.2d Cir. 1982), emphasis ours.
Because Wilhite awarded the arrearage only from the date of the trial court judgment, the language concerning date of judicial demand, arguably, is dicta. Nevertheless, the cases mentioned permit a court, either in the judgment awarding the increase or in a later action for arrearages, to make the award retroactive to a selected date.
The father strenuously argues that the award of arrearage from the date of judicial demand amounts to retroactive application of LRS 9:310, quoted in part in fn. *1151 one, and imposes an obligation on him to pay the mother money where none previously existed. We need not address the father's argument in this respect because we have determined that the case law prior to the effective date of § 310 permits trial and appellate courts to adjust the differential amount that may result from appellate modification of a trial court support judgment. Cumpton, Wilhite, supra. The statute simply mandates that "orders" for support or alimony "shall be retroactive to the filing date of the petition." Arguably, the statute may be aimed at enervating the Cumpton "presumption" because it now allows a court to shorten the effective date for an award only upon a finding of "good cause" for doing so. In our 1985 opinion increasing the monthly child support from $165 to $250, we determined that the child's needs were at least $500 when the lower court heard the evidence we there reviewed. The father's ability to pay was also determined on the evidence in that record. Nothing in the record of this appeal shows any change in the obligee's need for, or the obligor's ability to pay, the arrearage awarded. Under these circumstances we find no error in retroactive application of the increase under the cases cited and discussed.
The litigants stipulated that the father is entitled to a credit against the arrearage for his $218.85 overpayment on a dental insurance premium for the son. We shall amend to recognize this stipulated credit and reduce the judgment for the arrearage from $1,105 to $886.15.

JOINT CUSTODY
The family was living in Monroe when the parents were separated in 1980 and the father was awarded sole custody of his son. The mother obtained a divorce in 1981 but the father maintained sole custody of the child. Both litigants then married other spouses.
In late 1982, the father separated from his second wife and moved to Arkansas, he said, for work-related reasons. The mother ruled for custody of the son so he could remain in his Monroe school. She was awarded sole custody in December 1982.
In January 1983, she filed a rule demanding child support from the father, who responded with a rule demanding joint custody. In a February 1983 judgment, the court awarded joint custody and ordered the father to pay $165 monthly child support. Under the joint custody plan, which is still in effect, the son lives in Monroe with his mother during the nine months of the school year and with his father during the three months of summer. The parties have amicably complied with holiday and weekend visitation provisions of the judgment.
On May 2, 1984, the mother filed another rule to modify joint custody and to increase child support. The trial court rejected her demand for additional support. This court, as we have noted, reversed that judgment and allowed the increase.
The litigants filed the two rules here on appeal in July 1985, about one month after the father moved back to Monroe and purchased a home in the mother's neighborhood. He proposed an "equal time" arrangement which would give him custody from August through January and give the mother custody from February through July. The mother sought additional weekend and holiday visitation rights under the existing "9-3" plan.
The mother also demanded that the trial court declare the increase in child support that was granted by this court be "executory from the date of [her] judicial demand."
The trial court rejected any modification of the existing joint custody decree. While admitting that the father's plan might have been in the son's best interest had the father been living in Monroe when joint custody was first awarded, the court found that the father's plan would now be "disruptive of the stability and continuity that [had] been established."
The mother does not appeal the trial court's refusal to grant her proposed visitation *1152 modification. The father appealed the judgment in the respects mentioned.
The record indicates that the son enjoys fishing and hunting and is active in many sports activities. The father argues that his 50/50 plan would be in the son's best interest because it would allow father and son to enjoy seasonal activities together. He strenuously contends that the only barrier to equal custody (distance) was removed by his relocation to Monroe.
Permanent custody is determined with the aid of the same considerations that apply to provisional custody. CC Arts. 157, 146. "The best interest of the child is the sole criterion in a change of custody case." Everett v. Everett, 433 So.2d 705 (La.1983).
Equal custody is not necessarily in the best interest of the child within the meaning of Art. 146. Adams v. Adams, 441 So.2d 490 (La.App.2d Cir.1983); Plemer v. Plemer, 436 So.2d 1348 (La.App. 4th Cir. 1983). The court and the litigants must fashion a plan that serves the child's best interest by assuring the child frequent and continuing contact with both parents. This overriding principle, espoused in factors listed by Art. 146 C(2), guides the court in determining the extent to which shared physical custody contributes to the child's best interest. Carroway v. Carroway, 475 So.2d 48 (La.App.2d Cir.1985).
The father complains that he made an affirmative showing at trial warranting a change and that the only basis for the trial court's inaction is the notion, suggested only by the mother and not otherwise proved, that a change would be "disruptive" of the son's established routine. Both parents love and care for their son and each is capable of providing him with a comfortable and stable home.
The father currently lives with his third wife, their five-month-old son, and her 11-year-old daughter by a previous marriage. He works for Missouri Pacific railroad on a regularly scheduled route between Monroe and McGehee, Arkansas. He testified that the nature of his job permits him to work out of either city, and that he returned to Monroe with his new family so he could be near his son and more effectively provide him a father figure during his critical adolescent years. He said that under the present plan his ex-wife had complained that he had custody of the son each time school is out, so he proposed a 50/50 plan that would "split the summer" and give the mother some vacation and holiday time with her son. He also said that having the son in his custody during the fall would better enable him to serve as an example in the traditional father-son activities such as football and hunting.
The mother lives with her second husband. Her husband has a son by a previous marriage who visits for two months during summers when her son is in his father's custody.
The trial court essentially found that the father's plan would not sufficiently enhance the son's well-being to justify upsetting the stability that had been established during past school years with the mother and stepfather. Although we might agree that a different result might have been justified had the present circumstances existed at the outset of joint custody, we cannot say that the trial court abused its discretion. The mother has made reasonable efforts to keep the father informed of the son's academic and sports activities and has consistently allowed visitation and contact with the father, perhaps beyond the terms of the joint custody decree.
The importance of stability in the son's environment, especially at the age of 14, was properly considered. See and compare Everett, supra; Johnston v. McCullough, 410 So.2d 1105 (La.1982), and Bordelon v. Bordelon, 390 So.2d 1325 (La.1980). The trial court did not place undue emphasis on this factor in light of the quality and frequency of the contact between the son and his father. In the present setting, the father pays close attention to the son's athletic activities, confers with his coaches on his abilities and progress, and often attends his games. The son has gone on hunting and fishing trips with his father for the past three years during holidays. The father's decision to move back to Monroe was *1153 based on and will facilitate easier and more frequent contact between father and son without disturbing the son's pattern and routine at his mother's home. The trial court may consider any adverse effects of splitting the school year between parents. Carroway, supra; Peyton v. Peyton, 457 So.2d 321 (La.App.2d Cir.1984).
Our comparison of the circumstances of this case with those of Carroway and the factors enumerated in Art. 146 C(2) compels the conclusion that the trial court acted within its discretion.
The father argues that the circumstances of his case present a stronger argument for equal time custody than in Carroway, which this court admitted was a "very close" case. There, a similar "9-3" plan was affirmed where the child was only six years old and the parents lived 15 miles apart. The mother who had school-year custody lived only about one mile from the child's school. Here, the father says, he lives only about one mile from the mother and from the child's school, distances that would not pose the transportation problems of Carroway, especially in light of the son's age (14).
Common features among reported custody cases are not alone determinative of the result in any other set of circumstances. The trial court is obviously "in the best position to assess the particular facts and relationship involved." Carroway, supra, at p. 51. We must particularly defer to the trial court's findings that the son "seems to be a happy, well adjusted child" in light of the fact that the son, by consent of the litigants, only conferred with the judge in chambers and did not testify.
The trial court did not abuse its discretion or clearly err in its consideration, assessment, and weighing of the factors listed in Art. 146 C(2). The record supports the conclusion that the father has not made a showing that would warrant a change in custody.

DECREE
The judgment is amended to reduce the arrearage awarded to $886.15, and, as amended, at appellant's cost, is AFFIRMED.
NOTES
[1] LRS 9:310 reads, in part:

A. An order for child support or alimony shall be retroactive to the filing date of the petition for child support or alimony granted in the order. * * *
C. In the event the court finds good cause for not making the award retroactive, the court may fix the date such award shall become due.